WILLIAM L. CARNS and Others, as Copartners, Respondents, v. EDGAR W. BASSICK and Others, as Copartners, Defendants. EDGAR W. BASSICK, Appellant.

First Department, April 17, 1919.

Principal and agent — contract — implied promise by principal not to do anything to hinder or obstruct agent from performing contract of employment — rule as to right of principal to negotiate sale himself after employment of broker not applicable where broker specifically employed to negotiate contract with designated party — complaint alleging breach of contract by principal preventing broker from procuring order from designated person — allegations as to fraud — failure to allege that designated party was ready, able and willing to consummate order.

Where a party stipulates with another to do a certain thing, he thereby impliedly promises that he will himself do nothing which may hinder or obstruct the other from doing that thing.

The rule that a party having employed a broker or brokers to sell property may, nevertheless, negotiate the sale himself, and if he does so, unless the broker has been the efficient agency or the procuring cause of the sale, the principal is not liable to the broker for any commissions, does not apply where a broker has been specifically employed to negotiate a contract with a designated party, without reservation of the right to conduct independent negotiations with the same party.

A complaint in an action to recover damages for breach of a contract alleging that the defendant brokers employed the plaintiffs to negotiate and

procure an order for a specific article from a certain party at specified prices, and agreed to pay plaintiffs for their services an amount equal to the difference between the minimum price and the price paid by said party; that the plaintiffs negotiated the order satisfactorily to the defendants, and while they were continuing negotiations concerning the details of the transaction the defendants, in violation of their obligations to the plaintiffs, negotiated and closed the contract at a price less than the minimum price which the plaintiffs had been authorized to quote, and that thereby said party was induced to and did withdraw orders which it had previously placed or agreed to place through the plaintiffs, and that they were thereby prevented from closing said contract to their damage in a certain amount, shows a clear violation by the defendants of their implied agreement that they would not intentionally and purposely do anything to prevent the plaintiffs from procuring the order, and hence states a cause of action.

Allegations by the plaintiffs as to a second cause of action stating the facts aforesaid, and also that the acts of interference by the defendants were in bad faith or with the intent to defraud or cheat the plaintiffs, constitute a cause of action sounding in fraud.

A third cause of action by the plaintiffs repeating the allegations of plaintiffs' employment and alleging that in accordance therewith they negotiated and procured the contract for the defendants which they refused to accept or execute, is sufficient, although the plaintiffs failed to allege that the party from whom they procured the contract was ready, able and willing to consummate the same.

The defendants, irrespective of their intent, are liable for the consequences of their acts in breaching their contract for which damages are sought in the first alleged cause of action.

SMITH, J., dissented in part, with opinion.

APPEAL by the defendant, Edgar W. Bassick, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 28th day of January, 1919, overruling his demurrers to six causes of action set up in the complaint.

The demurrers challenged the complaint upon the ground that the pleadings in the several causes of action failed to state facts sufficient to constitute a cause of action.

*Louis B. Eppstein* of counsel [*Harry A. Rosenberg* with him on the brief; *Eppstein & Rosenberg,* attorneys], for the appellant.

*Henry Root Stern* of counsel [*James F. Sandefur* with him on the brief; *Rushmore, Bisbee & Stern,* attorneys], for the respondents.

SHEARN, J.:

The first cause of action is plainly one to recover damages for breach of contract. It is alleged that the defendant brokers, who were employed by a corporation engaged in the manufacture of munitions of war to negotiate in its behalf contracts and orders with foreign governments, employed the plaintiffs to negotiate and procure an order or orders from the French government for large quantities of picric acid at specified prices, the minimum being $1.60 per pound, and agreed to pay the plaintiffs for their services an amount equal to the difference between said minimum price and the price paid by the French government under the orders procured by the plaintiffs, as the same was paid to the defendants or to the manufacturing plant represented by them; that the plaintiffs negotiated, in accordance with their contract of employment, an order or orders from the French government for picric acid at $1.895 per pound in quantity of 4,000,000 pounds, satisfactory to the defendants and to the manufacturing plant represented by them, and while the plaintiffs were continuing under said contract of employment their negotiations with the French government on the details of the contract covering said order or orders with reasonable prospect of immediately consummating the same, the defendants, well knowing the same and without terminating the contract of employment and without giving the plaintiffs a reasonable opportunity of consummating their negotiations, in violation of the obligations which they owed to the plaintiffs under the contract of employment, negotiated and closed a contract with the French government, to be performed by the manufacturing plant represented by the defendants, for 4,000,000 pounds of picric acid at a price less than the minimum price of $1.60 per pound, which the plaintiffs had been authorized to quote on behalf of the defendants; that thereby the French government was induced to and did withdraw the orders for picric acid which it had previously placed, or agreed to place, through the plaintiffs, and the plaintiffs were prevented from closing said contract with the French government, to their damage in the sum of $1,180,000.

The contention of the plaintiffs, which I think is sound, is that where a party stipulates with another to do a certain

thing, he thereby impliedly promises that he will himself do nothing which may hinder or obstruct that other from doing that thing; that in violation of such implied agreement the defendants intentionally interfered with plaintiffs' negotiations with the French government and, when the plaintiffs were on the eve of success, defendants not only hindered and obstructed the plaintiffs but rendered it impossible for the plaintiffs to complete performance, to plaintiffs' damage. In *Patterson* v. *Meyerhofer* (204 N. Y. 96, 100) the court said: " In the case of every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part." To the same effect are *May* v. *Hettrick Brothers Co.* (181 App. Div. 3; affd., 226 N. Y. 580) and *American Locomotive Co.* v. *Harris* (239 Fed. Rep. 234, 239). The courts are bound to give the same force and effect to the implied agreement of the parties, where such implications are determinable, as to the parts which are expressed, and when once it is determined what the implied provisions are, they are to be read into the contract and the rights of the parties are to be adjudged as though such provisions were expressed. (*Grossman* v. *Schenker,* 206 N. Y. 466.) The allegations above summarized show a clear violation by the defendants of their implied agreement that they would not intentionally and purposely do anything to prevent the plaintiffs from doing the thing that plaintiffs were expressly employed to do. We are not concerned with the question whether the complaint sufficiently shows damage to the amount alleged or with the proper measure of damages, for it will be presumed that the plaintiffs suffered at least nominal damages from the breach.

The defendants contend that the case does not fall within the principles above stated because, there being no agreement that the plaintiffs had either an exclusive agency to make the sales or a definite period within which defendants agreed to accept the order or orders, the defendants had a right to negotiate the contracts themselves. The basis of this contention is the well-settled rule that a party having employed a broker or brokers to sell property may nevertheless negotiate the sale himself, and if he does so, unless the broker

has been the efficient agency or the procuring cause of the sale, the principal is not liable to the broker for any commissions. This rule, so far as I have discovered, has never been applied to a case such as this, where a broker has been specifically employed to negotiate a contract with a designated party, without reservation of the right to conduct independent negotiations with the same party. The cases are manifestly dissimilar. The same rule should not be applied in the two cases if it would be plainly unreasonable to do so. In the case of employing a broker to find a purchaser it would be utterly unreasonable and an obvious handicap to successful conduct of business to imply from the contract of employment an agreement on the part of the owner not to sell his property to any purchaser not produced by the broker, or not to employ other brokers to endeavor to find a purchaser. By so doing the owner does not obstruct or hinder the first broker or render it impossible for him to do what he is employed to do, i. e., to find a purchaser. When, however, the owner has selected a prospective customer satisfactory to him and employs a broker to negotiate a contract with that customer at a specified price, the nature of the contract and the services contemplated are quite different from the case of employing a broker to find a purchaser. In such case the broker is employed not to find the purchaser but to negotiate the contract at a specified price. Obviously the broker would have no possibility of concluding a contract and earning his compensation if at the height of the negotiations the owner stepped in and offered to close on his own account at a lower price. To imply any such right would make the contract of employment so futile and meaningless as to be unreasonable. The law reads good faith into every contract. Reasonableness is the rule for construing contracts and determining their implications. To hold that one may employ another at an agreed compensation to do a specific thing, and yet may with impunity deliberately prevent the other from doing that thing, is so plainly violative of good faith and reasonableness as to preclude extending the rule in ordinary brokerage cases to such a case as this.

In the second cause of action the same facts are pleaded and there is added the allegation that the acts of interference by the defendants were done in bad faith and with the inten-

tion of preventing the consummation of the contract by the plaintiffs. The only difference between the two causes of action is that whereas the first is for mere breach of contract the second is based upon bad faith amounting to fraud. It is true that the mere allegation of bad faith would add nothing to a cause of action unless the facts pleaded were of such nature as to justify the allegation. But here the facts do justify the allegation and it is clearly to be inferred that the acts of the defendants, alleged to have been done with full knowledge that plaintiffs had actually procured the orders from the French government and were in the course of negotiating the details of the contracts, with every promise of success, were not only calculated to but ntended to defraud the plaintiffs of the fruits of their work and their agreed compensation. Irrespective of their intent, the defendants are liable for the consequences of their acts in breaching their contract, for which damages are sought in the first cause of action. The same state of facts, coupled with allegations showing that the acts were done in bad faith or with the intent to defraud or cheat the plaintiffs out of the fruits of their work adequately constitute a cause of action sounding in fraud. The only effect of setting out the facts in two separate causes of action is to give proper notice to the defendants that the plaintiffs intend to hold them on both theories.

The third cause of action repeats the allegations of plaintiffs' employment and alleges that in accordance therewith plaintiffs negotiated and procured from the French government, for the defendants or for the manufacturing plant represented by the defendants, an order or orders for picric acid at $1.895 per pound and in quantities of 4,000,000 pounds upon terms and conditions satisfactory to the defendants and to said manufacturing plant, but that the defendants refused to accept or execute or cause the manufacturing plant represented by them to accept or execute said orders, to plaintiffs' damage in $1,180,000. The basis of the attack upon this cause of action is its failure to allege that the French government was ready, able and willing to consummate the agreement. Here again the distinction is to be drawn between a contract to procure an order from a designated party and an ordinary brokerage contract to find a purchaser. In the

latter case the rule of pleading relied on by the appellants is for the protection of the principal against trumped-up claims of brokerage for negotiating contracts with parties whose financial standing and willingness to be bound by the terms of a contract the principal knows nothing about. Where, however, the principal has designated the party with whom the broker is employed to negotiate the contract at a specified price it will be presumed that the principal has satisfied himself on these points before authorizing the contract. (*Bunnell* v. *Chapman,* 175 App. Div. 855, 857; 9 C. J. 595, 596; Mechem Agency [2d ed.], § 2448; *Stoutenburgh* v. *Evans,* 142 Iowa, 239.)

As what has been said applies to the fourth, fifth and sixth causes of action, which as to another transaction practically duplicate respectively the first, second, and third causes of action, it follows that the demurrers were properly overruled as to each cause of action and the order appealed from should be affirmed, with ten dollars costs and disbursements, with leave to withdraw the demurrers and answer within ten days on payment of costs.

CLARKE, P. J., LAUGHLIN and MERRELL, JJ., concurred; SMITH, J., dissented in part.

SMITH, J. (dissenting):

My dissent from the conclusion reached by the majority of the court is simply in respect of the first and fourth causes of action. The averments of the first and second causes of action are, in all respects, similar, with the single exception that in the second cause of action it is averred that the acts of the defendants in consummating the contract with the French government were committed " in bad faith and with the intention * * * of preventing the consummation of said contract under negotiation by plaintiffs with the French government." It may be assumed, therefore, that it was the intention of the pleader to omit these elements in his statement of his first cause of action, to the end that his right to recover without such proof might be tested. The law is well settled in the ordinary brokerage contracts that the contract is not exclusive unless it is therein specifically so provided. (*McClave* v. *Paine,* 49 N. Y. 561; *Myers* v. *Batcheller,*

177 App. Div. 47; *Wylie* v. *Marine Nat. Bank*, 61 N. Y. 415.) I see no substantial reason for holding a different rule where the customer is named in the brokerage contract. It is clear that the defendants might assist in procuring that contract. They might praise the property to be sold and urge the sale by the proposed purchaser. But, suppose during the negotiations they should ascertain in good faith that the sale could not be made with conditions satisfactory and necessary to themselves at the price that they have named. Must they then abandon the sale entirely or pay the commission from the reduced price received? Suppose they cannot afford to pay the commissions from the reduced purchase price, must they then lose the sale entirely because perchance they have offered a broker a commission if a sale be made at a greater price? This court has by this decision answered yes. They must lose their sale, because if sold for less they are preventing a sale at the minimum price given to the broker. And this rule is held notwithstanding the defendants, in good faith, *believed and knew* that the proposed sale at the greater price could not be consummated. This proposition is to my mind repugnant to sound reason.

This contract which was finally negotiated, involving the production of 4,000,000 pounds of picric acid, involving between $6,000,000 and $8,000,000, was not the ordinary contract of purchase and sale. It was a contract in which the details were of vital importance. Whether payment should be made after the delivery of all of the acid, or of a certain part thereof; whether security should be given for the payment, and if so, what security; whether advancements should be made by the purchaser to enable the manufacturer to enlarge his plant to produce this large amount in quick time for war purposes, these were not the details of an ordinary contract of purchase and sale, but were as vital as was the quantity and the price. The plaintiffs' contract was for compensation if the sale were made at a price of $1.60 a pound. There was annexed the implied condition that the terms of payment and the other details of the contract, important, as indicated, should be satisfactory to the manufacturer or to the defendants. The plaintiffs did not state their first cause of action upon a contract fulfilled. They admit that no contract

was made satisfactory to the defendants at a price of $1.60 per pound. All they allege is that they had agreed upon the price and amount and were negotiating upon details, "*with reasonable prospect* of immediately consummating the same," which was known to the defendants, and that they were prevented from that consummation by the acts of the defendants negotiating a contract at a lesser sum.

In a transaction of this magnitude, it is inconceivable that a seller would intentionally tie his own hands in order that the broker may take further time to further negotiate and consummate a sale. Where a seller, after having employed a broker, himself steps in and makes a sale, if the brokerage contract were not definite, he might be deemed to have acted with and in co-operation with the broker so as to entitle the broker to his compensation. Not so, however, where the brokerage contract is to sell for a specific price, for, in that case, the broker has not performed his contract unless he produces a customer satisfactory to the seller who will pay that price. (2 Mechem Agency [2d ed.], § 2437.) In the note to this section the author says: " Where the price was fixed a purchaser must be produced ready, willing and able to buy at that price, and if the purchaser offered will not buy at that price, but only at a lower, the broker will not be entitled to commissions, *unless there was collusion between the principal and purchaser.*" (*Faulkner* v. *Cornell*, 80 App. Div. 161; *McClave* v. *Paine, supra*.)

It has many times been said that good faith is implied in every contract and so it is in this contract. If the defendants in bad faith and for the purpose of depriving the plaintiffs of their commissions had negotiated this sale they should properly be held liable to the plaintiffs for their commissions. But the cause of action as alleged in the first count presents no question of bad faith or sinister purpose in the making of the contract. It assumes, as I view it, and as the pleader intended, that the contract made was made by the defendants in the full belief that it was the best contract obtainable.

In *Patterson* v. *Meyerhofer* (204 N. Y. 96) the rule is stated: " In the case of every contract there is an implied undertaking on the part of each party that he will not *intentionally and purposely* do anything to prevent the other party from carry-

ing out the agreement on his part, and a party who causes or sanctions the breach of an agreement is thereby precluded from recovering damages for its non-performance or from interposing it as a defense to an action upon the contract." In Mechem on Agency ([2d ed.] p. 2022) the author says: "Thus, it could not be contended that the principal might, by slightly reducing his terms *for the purpose* of avoiding liability to the broker, nevertheless avail himself of the broker's efforts without being liable to him for his commission." (Italics in text.) Moreover, this rule of liability is recognized by the pleader himself who alleges in his second cause of action all the facts alleged in his first cause of action and in addition that the acts of the defendants were "done in bad faith and with the intention on the part of the defendants of preventing the consummation of said contract under negotiation by plaintiffs with the French government."

To briefly summarize my views: *First,* a broker's contract is not exclusive unless so stipulated. *Second,* the seller is only liable to the broker upon strict performance of the broker's contract unless the consummation of that contract be intentionally prevented by the seller for the purpose of defeating the right of the broker to compensation. *Third,* the complaint must show a cause of action, and as the intervention of the defendants in the making of this contract at a lower rate may have been necessary to procure the contract, the plaintiffs have stated no cause of action for lack of an allegation that the making of the contract by the defendants was in bad faith and for the purpose of preventing the consummation of the contract that the plaintiffs were attempting to negotiate. In my judgment the first cause of action is, therefore, defective, and the demurrer thereto should have been sustained. The same reasoning applies to the fourth cause of action.

Order affirmed, with ten dollars costs and disbursements, with leave to defendants to withdraw demurrer and to answer on payment of costs in this court and at Special Term.