2011 UT 64

**YOUNG LIVING ESSENTIAL OILS, LC, Plaintiff and Respondent,**

v.

**Carlos MARIN, Defendant and Petitioner.**

No. 20090875.

Supreme Court of Utah.

Oct. 21, 2011.

Barnard N. Madsen, Scott D. Preston, Joseph M. Hepworth, Provo, for plaintiff.

Scott B. Mitchell, Salt Lake City, for defendant.

Justice LEE, opinion of the Court:

¶ 1 This is a breach of contract suit in which defendant Carlos Marin seeks to define the contracting parties' rights under an integrated distributorship agreement through the implied covenant of good faith and fair dealing. The district court granted summary judgment against Marin and in favor of plaintiff Young Living Essential Oils, holding that Young Living's alleged duty to provide marketing materials to Marin could not be inferred through the covenant of good faith and fair dealing. The court of appeals affirmed, and so do we. We clarify below the proper scope of this covenant and hold that it has no application in circumstances like those presented here.

I

¶ 2 In January 2005, Young Living entered into an agreement with Carlos Marin under which Marin would act as a distributor of Young Living's products. Marin represented that he had significant experience as a distributor in performing the duties outlined in the contract. He also agreed to meet certain cumulative "performance guarantees" (measured by dollar value of sales) by the 15th of each month from February through July 2005.

¶ 3 Young Living, for its part, agreed to pay Marin monthly minimum "advance payments," offset by any commission payments due under a "standard commission payout plan." The advances were to help Marin devote his energies to his duties under the contract and to entice him to quickly develop a marketing base for Young Living's products. An integration clause in the agreement provided that no other representations or understandings would be valid under the contract. There was no reference in the contract to any marketing materials to be used in distributing the product.

¶ 4 Young Living made its first advance payment to Marin on January 15, 2005, and its second on February 15, 2005, after Marin met his first performance guarantee on that date. Although Marin failed to meet his next performance guarantee on March 15, Young Living advanced him $15,000 with the understanding that Marin would meet that quota by the next month. By April 15, however, Marin had failed to meet both his March and April performance guarantees.

¶ 5 In July 2005, Young Living filed suit against Marin, asserting that Marin was in breach of contract for failing to meet the performance guarantees set forth in the distributorship agreement and claiming damages measured by the difference between the advance payments to Marin ($65,000) and the commissions actually earned ($3,637.57). Marin answered, claiming that his lack of performance was excused by Young Living's

failure to provide him with marketing materials to assist him in meeting his performance guarantees. In support of this defense, Marin submitted an affidavit alleging that Young Living had induced him to enter into the agreement by promising to provide by February 1, 2005, a "mainstream marketing website, recruiting DVD, audio CD, and other marketing materials." Moreover, in the following months as Marin had trouble meeting his performance guarantees, Marin alleged that he had had various conversations with Young Living representatives in which they acknowledged that they had failed to provide the agreed-upon marketing materials and indicated an understanding that those materials were essential for Marin to fulfill his duties under the contract.

¶ 6 The district court granted Young Living's motion for summary judgment, holding that the parol-evidence rule barred extrinsic evidence of a condition not set forth in the parties' integrated contract and that such a condition could not be inferred through the covenant of good faith and fair dealing. Young Living subsequently submitted a proposed final judgment (including an award of attorney fees), which was entered by the district court despite Marin's objection that a portion of the fees awarded were incurred in connection with tort claims on which Young Living had not prevailed. On appeal, the court of appeals affirmed the summary judgment for Young Living and also upheld the fee award on the ground that Marin had failed to preserve his challenge to Young Living's proposed final judgment because his objection was untimely.

¶ 7 We granted certiorari to review the court of appeals' treatment of the covenant of good faith and fair dealing in its affirmance of Young Living's summary judgment and also to consider its affirmance of the district court's attorney fee award. "On certiorari, we review the decision of the court of appeals for correctness, giving no deference to its conclusions of law." *State v. White*, 2011 UT 21, ¶ 14, 251 P.3d 820.

## II

¶ 8 The implied covenant of good faith and fair dealing performs a significant but perilous role in the law of contracts. Its significance lies in its function of inferring as a term of every contract a duty to perform in the good faith manner that the parties surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their dispute.[1] This function is important, in that the parties to a contract cannot feasibly anticipate all possible contingencies nor reasonably resolve how they would address them in writing. Yet the judicial inference of contract terms is also fraught with peril, as its misuse threatens "commercial certainty and breed[s] costly litigation."[2]

¶ 9 Our cases have balanced these concerns by charting a limited role for the covenant of good faith and fair dealing. First, we have recognized an implied duty that contracting parties "refrain from actions that will intentionally 'destroy or injure the other party's right to receive the fruits of the contract.'" *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 43, 104 P.3d 1226, 1239 (quoting *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199–200

---

1. *See St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991) (noting the covenant is informed by "the agreed common purpose and the justified expectations of the other party"); *Olympus Hills Shopping Ctr., Ltd. v. Smith's Food & Drug Ctrs., Inc.*, 889 P.2d 445, 450 (Utah Ct.App.1994) (noting that "contracting parties, hard as they may try, cannot reduce every understanding to a stated term," and that "[t]he law of good faith and fair dealing, though inexact, attempts a remedy for [the] abuse" of the parties' "expected benefit of [the] bargain" (footnote omitted)); *Mkt. St. Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588 (7th Cir.1991) (explaining the function of the covenant as "giv[ing] the parties what they would have stipulated for expressly if

at the time of making the contract they had had complete knowledge of the future and the costs of negotiating and adding provisions to the contract had been zero").

2. *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir.1990); *see also Sw. Sav. & Loan Ass'n v. SunAmp Sys., Inc.*, 172 Ariz. 553, 838 P.2d 1314, 1319 (Ariz.Ct. App.1992) ("If contracting parties cannot profitably use their contractual powers without fear that a jury will second-guess them under a vague standard of good faith, the law will impair the predictability that an orderly commerce requires.")

(Utah 1991)).[3] Such a duty advances the core function of the covenant, as no one would reasonably accede to a contract that left him vulnerable to another's opportunistic interference with the contract's fulfillment. And that same fact protects commercial reliance interests, since a term that all reasonable parties would agree to is not likely to be imposed on the mere basis of a judge's subjective "sense of justice." *Oakwood Vill.*, 2004 UT 101, ¶ 45, 104 P.3d 1226.

¶ 10 With these concerns in mind, we have set a high bar for the invocation of a new covenant. Under our cases, the court may recognize a covenant of good faith and fair dealing where it is clear from the parties' "course of dealings" or a settled custom or usage of trade that the parties undoubtedly would have agreed to the covenant if they had considered and addressed it. *Id.* ¶ 43. No such covenant may be invoked, however, if it would create obligations "inconsistent with express contractual terms." *Id.* ¶ 45.[4] These limitations likewise protect the reliance interests of the parties to a contract and foreclose the imposition of a code of commercial morality rooted merely in judicial sensibilities. Where the court adopts a covenant enshrined in a settled custom or usage of trade, it is simply endorsing a universal standard that the parties would doubtless have adopted if they had thought to address it by contract. Where the parties themselves have agreed to terms that address the circumstance that gave rise to their dispute, by contrast, the court has no business injecting its own sense of what amounts to "fair dealing." By enforcing these standards and limitations, our cases preserve the core role of the covenant of good faith while controlling against its misuse to the detriment of commercial security and reliance.

¶ 11 Marin falls far short in his attempt to invoke the covenant of good faith and fair dealing under these standards. The covenant that Marin has claimed is not rooted in an attempt to require Young Living to "refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract." *Id.* ¶ 42 (internal quotations marks omitted). Instead, he seeks to impose on Young Living an affirmative duty to provide a particular set of marketing materials by a certain date. That duty, moreover, is not even allegedly based in a universally accepted obligation established through industry custom or the parties' course of dealing. Marin does not allege, for example, that anyone negotiating a distributorship contract like this one would inevitably have understood and agreed to a condition that required the provision of the marketing materials that Marin expected by the date that he has identified.

¶ 12 Marin asserts, rather, that in various conversations Young Living's representatives acknowledged a responsibility to provide certain "marketing tools" and also suggested that Marin's "inability to satisfy the performance guarantees" spelled out in the contract "would not affect [his] receipt of" certain advance payments. None of these conversations come close to establishing a basis for a judicially imposed covenant of good faith; concluding that the provision of the anticipated marketing materials by the prescribed

---

**3.** *See* RESTATEMENT (SECOND) OF CONTRACTS § 205 (1981) (noting that the covenant encompasses a duty of "honesty in fact" to refrain from interfering with other's ability to perform contractual duties); RESTATEMENT OF CONTRACTS § 295 (1932) (precluding "prevent[ion] or hind[rance]" of the satisfaction of a condition to performance); *see also Carns v. Bassick*, 187 A.D. 280, 175 N.Y.S. 670, 673 (1919) ("To hold that one may employ another ... to do a specific thing, and yet may with impunity deliberately prevent the other from doing that thing, is ... plainly violative of good faith....").

**4.** As the court of appeals noted, we have also sometimes asserted that the covenant " 'cannot be read to establish new, independent rights or

duties to which the parties did not agree ex ante.' " *Young Living Essential Oils, LC v. Marin*, 2009 UT App272U, para. 8, 2009 WL 3042385 (quoting *Oakwood Vill.*, 2004 UT 101, ¶ 45, 104 P.3d 1226). Properly conceived, however, that proviso merely restates the proscription against using the covenant to establish new rights or duties that are *"inconsistent with* express contractual terms," as the covenant would be completely negated if it could never establish any independent rights not expressly agreed to by contract. To the extent our cases suggest otherwise—indicating a broad proscription against *ever* using the covenant to establish duties not expressly agreed to by the parties—we disavow those suggestions here.

date was a duty that the parties to a distributorship agreement would certainly have agreed to if they had thought to address it. Instead of pointing to some universal industry custom or standard to that effect, Marin simply cites the oral representations of the other party to the contract. He does so, moreover, in open contravention of the integrated terms of the written distributorship contract, which condition Marin's eligibility for advances and commissions on his fulfillment of the performance standards that he now claims Young Living waived. We cannot endorse the covenant that Marin seeks without treading down a path we have repeatedly foreclosed-of imposing our own sense of commercial morality at the expense of the express terms of the parties' contract. This we refuse to do, and Marin's claim fails on that basis.[5]

¶ 13 Marin attempts to shoehorn his claim into the standards in our cases by asserting that his affidavit is not directed at parol evidence of a side agreement regarding marketing materials, but instead establishes the parties' "course of dealing." We find his characterization of the affidavit incomplete, however, and ultimately deem it to fall short of establishing the sort of "course of dealing" that is relevant to the covenant of good faith and fair dealing. Contrary to Marin's characterization, his affidavit does attempt in part to present parol evidence of a side agreement that is inadmissible as extrinsic evidence under the parties' integrated contract. *See Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 11, 182 P.3d 326 ("[I]f a contract is integrated, parol evidence is … not admissible to vary or contradict the clear and unambiguous terms of the contract." (internal quotation marks omitted)). Specifically, Marin alleges that he was "induce[d] to enter into the agreement by a representation that Young Living was nearing completion of a new mainstream marketing website, recruiting DVD, audio CD, and other marketing materials." He also alleges an understanding by the parties "that these marketing tools would be absolutely necessary in order … to be able to meet [the] performance guarantees under the Agreement" and that "it was represented [to him] that they would be available for [his] use by February 1, 2005." These allegations, however, are clearly barred by the parol-evidence rule. *Tangren Family Trust*, 2008 UT 20, ¶ 11, 182 P.3d 326. The distributorship agreement is expressly integrated, and it says nothing about marketing materials as an inducement to the contract or as a precondition to the requirement of Marin meeting the performance guarantees. To the extent the Marin affidavit aims to substitute the terms of a side deal for the text of the contract, his argument clearly fails on parol-evidence grounds and cannot possibly be resuscitated by his invocation of the covenant of good faith and fair dealing.

¶ 14 Much of the rest of the Marin affidavit falters on similar grounds. Marin insists that some of the representations he claims to have been made by Young Living were *after*

---

5. There is no reason to think that the parties to a distribution agreement would necessarily allocate to the *supplier* the duty to produce any marketing materials deemed useful to the distributor. Without some basis in the parties' agreement, settled course of dealing, or custom or trade usage, it seems equally as likely that the parties would deem that responsibility to fall on the distributor. That could arguably have been Young Living's understanding here, given that Marin represented himself to Young Living as one with "significant experience as a Distributor/Leader and … in being part of quality motivational and training materials," and that Marin attests that he himself "wrote more than 20 marketing and training scripts for video and web based content" for Young Living's products and "traveled to St. Augustine, Florida to work with Rainmaker Consulting shooting marketing videos."

Marin obviously contends that the duty is Young Living's, but his basis for doing so would take us well past the confines of the covenant of good faith and into the realm of the parol-evidence rule. If we were to impose a duty on Young Living to provide marketing materials, it would be on the basis of its alleged oral agreement to do so, not on a universally accepted duty evidenced by industry custom or course of dealing. And accepting that premise would only require us to head further down the path of parol evidence, which we would need to next consult to determine the precise nature of the materials Young Living covenanted to provide and the date it was to provide them. All of this confirms that this case is governed by the parol-evidence rule and is not the proper subject of the covenant of good faith and fair dealing.

the execution of the contract, and thus escape operation of the parol-evidence rule on the ground that it applies only to *prior* or *contemporaneous* conversations, representations, or statements. *See id.* In context, however, the representations that Marin alleges can only be understood to refer back to the prior representations that he claims to have induced him to enter into the contract in the first place. Such representations refer vaguely to an alleged acknowledgement by Young Living of "promised marketing tools." Marin never comes close to asserting that Young Living agreed to new terms that superseded the provisions of the written distributorship agreement. His allegations accordingly are the domain of the parol evidence rule and are not proper fodder for the covenant of good faith and fair dealing.

¶ 15 Marin misperceives the kind of "course of dealing" evidence that is relevant to establishing a covenant of good faith and fair dealing. The covenant is not a license for the judiciary to codify standards of altruism that a party may have held itself to in the course of its contract performance. Young Living may have expressed a willingness to provide marketing materials to Marin, but that does not itself establish a binding legal covenant to do so. To sustain a new covenant, evidence of "course of dealing" would have to conform to the core terms of the legal doctrine, by demonstrating a settled, longstanding pattern of dealing that the parties unquestionably would have relied on (but failed to memorialize) in entering into their contract. If Young Living for years provided new product to its distributors on the first of every month, for example, but suddenly withheld such product until the 20th of the month despite the existence of a monthly sales quota, it might make sense to deem Young Living to have breached a covenant informed by the parties' longstanding course of dealing. That is not at all what is presented by Marin here, however, and his claim fails despite his invocation of the "course of dealing" terminology.

### III

¶ 16 The covenant of good faith inheres in every contract, but the scope and content of the covenant are limited. Marin's claim against Young Living hinges on a covenant that would take us well beyond the bounds established in our cases, and we accordingly affirm the court of appeals' decision upholding summary judgment in Young Living's favor.

¶ 17 Our affirmance of summary judgment still leaves unresolved an additional matter raised on appeal, which is Marin's challenge to the attorney fees awarded to Young Living in the district court. Although Young Living contends that Marin failed to preserve this matter for appeal, it also concedes that it was not entitled to recover fees related to non-contract claims and has agreed to submit a revised fee affidavit on remand to the district court. In light of that concession, we need not reach Marin's arguments that the trial court's error on this issue was "plain" or that we should reach the merits of this issue on the basis of "exceptional circumstances." Instead, we simply accept Young Living's concession and remand to allow the district court to make any appropriate corrections to the fee award based on a revised fee affidavit filed by Young Living.

¶ 18 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice LEE'S opinion.