*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 64**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MIKE VANDER VEUR,
*Respondent*,

*v.*

GROOVE ENTERTAINMENT TECHNOLOGIES,
*Petitioner*.

No. 20180730
Heard May 13, 2019
Filed October 29, 2019

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Vernice S. Trease
No. 130908551

Attorneys:

Nan T. Bassett, Jurhee A. Rice, Salt Lake City, for respondent

David C. Reymann, Cheylynn Hayman, Salt Lake City, for petitioner

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which ASSOCIATE CHIEF JUSTICE LEE and JUSTICE PETERSEN joined.

JUSTICE PEARCE filed an opinion concurring in part and dissenting in part, in which JUSTICE HIMONAS joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶1 Mike Vander Veur claims that his employer, Groove Entertainment Technologies (Groove), fired him in an effort to avoid payment of commissions. Mr. Vander Veur had secured six sales contracts prior to his termination that later proceeded to installation. Groove never compensated him for those contracts. He filed suit claiming that, although he was an at-will employee, his termination violated the implied covenant of good faith and fair dealing in his

compensation agreement with Groove. The district court dismissed his claims, concluding that the covenant could not be applied in this context. The court of appeals reversed, holding that the covenant could be invoked to prevent employers from using at-will termination to avoid obligations under a compensation agreement. Because we find that this application of the covenant is improper, we reverse.

## Background

¶2    Groove Entertainment Technologies provides television services to large-scale customers, like hotels. In September 2010, Groove hired Mike Vander Veur as a sales representative for Groove, and he was responsible for securing new contracts for television services. In October 2012, Mr. Vander Veur and Groove entered into a compensation agreement, which provided that it would "remain in effect as long as [Mr. Vander Veur] is employed by Groove." The agreement stated that Groove would pay Mr. Vander Veur "a commission for each Qualifying Sale deemed commissionable as defined in this Agreement." It defined "Qualifying Sale" as "a commissionable sale where the minimum margin requirements are met and the installation is complete." The agreement also provided that he would receive bi-weekly draws on his commissions and that once commissions were earned, the draws would be deducted and he would be "paid the balance of the commission." Mr. Vander Veur also signed an employee handbook in 2010, 2011, and 2013, in which he acknowledged that he was an at-will employee who could be terminated "with or without notice and with or without cause at any time."

¶3    Groove terminated Mr. Vander Veur in June 2013. Prior to his termination, he claims he had obtained written or verbal commitments for six commissionable sales. None of those six sales had proceeded to installation of the product prior to his termination, but all six installations were completed within three months of his termination.

¶4    Also, in the spring of 2013, Mr. Vander Veur was working with Groove's president and a lead sales representative on a sales contract with the Grand America, for which they expected to receive a large bonus (Showtime bonus) in lieu of their typical fee. Mr. Vander Veur claims that the three of them verbally agreed to split the Showtime bonus, after paying out $1,000 to another employee involved in the sale. This bonus was not contemplated in the compensation agreement, but rather constitutes a separate alleged oral contract. That job was installed before his June 2013

termination, but Groove did not receive the Showtime bonus money until July 2013. Groove did not pay him for this bonus either.

¶5   Mr. Vander Veur filed suit against Groove, alleging it had breached the implied covenant of good faith and fair dealing by terminating him to avoid paying the six commissions and the Showtime bonus.[1] The district court granted summary judgment to Groove on all issues and dismissed Mr. Vander Veur's claims with prejudice. He appealed to the court of appeals, which held, as a matter of first impression, that the implied covenant of good faith and fair dealing "may be employed in limited circumstances to protect an at-will employee's right to receive compensation for work performed pursuant to a compensation agreement attendant to the at-will employment relationship."[2] Groove then petitioned this court for certiorari, which we granted.

¶6   We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(a).

**Issue and Standard of Review**

¶7   We must determine whether the implied covenant of good faith and fair dealing prohibits an employer from terminating an employee for the purpose of avoiding payment of commissions. On certiorari, we review "the court of appeals' decision for correctness, without according any deference to its analysis."[3] We review a district court's "grant or denial of summary judgment for correctness

---

[1] Groove also counterclaimed for breach of contract and unjust enrichment, arguing that Mr. Vander Veur had received more in commission draws than he had made in commission. The district court entered summary judgment in Groove's favor on this claim, and the court of appeals affirmed. That issue is not before us here. The question on certiorari is limited to whether the court of appeals "erred in concluding that [Mr. Vander Veur] could rely on allegations that [Groove] had terminated his at-will employment for the purpose of avoiding payment of commissions to support his claim that [Groove] violated the implied covenant of good faith and fair dealing."

[2] *Vander Veur v. Groove Entm't Techs.*, 2018 UT App 148, ¶ 18, 436 P.3d 109.

[3] *State v. Ainsworth*, 2017 UT 60, ¶ 13, 423 P.3d 1229.

and view[] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."[4]

## Analysis

¶8    Mr. Vander Veur claims that Groove terminated him to avoid payment of commissions under his compensation agreement and a bonus, which he alleges violates the implied covenant of good faith and fair dealing. Groove argues that application of the covenant of good faith in this case contradicts the express contractual language of the compensation agreement and that the parties would not have agreed to the terms Mr. Vander Veur seeks. We agree that the covenant contradicts the language of the compensation agreement. Accordingly, we reverse on that issue. But we conclude that the district court's dismissal of Mr. Vander Veur's Showtime bonus claim was not supported by a sufficient legal or factual basis. So we affirm the court of appeals on that issue, and remand for additional proceedings.

## I. Mr. Vander Veur Is Not Entitled to Post-Termination Commissions

¶9    Mr. Vander Veur was an at-will employee, meaning that "either the employer or the employee may terminate the employment for any reason (or no reason) except where prohibited by law."[5] But he and Groove had also entered into a compensation agreement contract. And all contracts contain a covenant of good faith and fair dealing, including employment contracts.[6] The covenant operates by "inferring as a term of every contract a duty to perform in the good faith manner that the parties surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their dispute."[7] In other words, "each party impliedly promises that he will not intentionally or purposely do anything

---

[4] *ZB, N.A. v. Crapo*, 2017 UT 12, ¶ 11, 394 P.3d 338.

[5] *Cabaness v. Thomas*, 2010 UT 23, ¶ 78, 232 P.3d 486 (internal quotation marks omitted).

[6] *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991) (explaining that "every contract is subject to an implied covenant of good faith").

[7] *Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶ 8, 266 P.3d 814.

which will destroy or injure the other party's right to receive the fruits of the contract."[8]

¶10 Although "a covenant of good faith and fair dealing inheres in almost every contract, some general principles limit the scope of the covenant."[9] The covenant "cannot be read to establish new, independent rights or duties to which the parties did not agree" at the outset.[10] It "cannot create rights and duties inconsistent with express contractual terms"[11] or "compel a contractual party to exercise a contractual right 'to its own detriment for the purpose of benefitting another party to the contract.'"[12] It "cannot be construed to change an indefinite-term, at-will employment contract into a contract that requires an employer to have good cause to justify a discharge."[13] And we "will not use this covenant to achieve an outcome in harmony with the court's sense of justice but inconsistent with the express terms of the applicable contract."[14] Applying these principles in this case, we conclude that the court of appeals erred for three reasons.

*A. Application of the covenant of good faith and fair dealing here would contradict the express terms of the compensation agreement*

¶11 First, we conclude that the court of appeals erred because its decision contradicted an express term of the compensation agreement. The covenant of good faith and fair dealing provides that all parties to a contract will perform their obligations "in the good faith manner that the parties surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their

---

[8] *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199 (Utah 1991).

[9] *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 45, 104 P.3d 1226.

[10] *Id.*

[11] *Id.*

[12] *Id.* (citation omitted).

[13] *Brehany*, 812 P.2d at 55.

[14] *Oakwood Vill.*, 2004 UT 101, ¶ 45; *see also Malibu Inv. Co. v. Sparks*, 2000 UT 30, ¶ 19, 996 P.2d 1043 ("[W]e will not interpret the implied covenant of good faith and fair dealing to make a better contract for the parties than they made for themselves." (internal quotation marks omitted)).

dispute."[15] But where, as here, the "parties themselves have agreed to terms that address the circumstance that gave rise to their dispute, by contrast, the court has no business injecting its own sense of what amounts to 'fair dealing.'"[16] Mr. Vander Veur and Groove entered into an express contract—the compensation agreement. That agreement stated that it would "remain in effect as long as [Mr. Vander Veur] [wa]s employed by Groove." It provided that Groove would pay Mr. Vander Veur "a commission for each Qualifying Sale deemed commissionable as defined in this Agreement." And it defined "Qualifying Sale" as "a commissionable sale where the minimum margin requirements are met and the installation is complete."

¶12 By the express language of the compensation agreement, Mr. Vander Veur could only be paid for contracts that had been installed, and he was only entitled to compensation while he remained employed. He could not, therefore, have been entitled to compensation for contracts that proceeded to installation after his termination, because after termination, the compensation agreement was no longer in effect. In fact, Mr. Vander Veur concedes that, under the language of the contract, he "had to be employed at the time of installation to receive commissions." So the parties did "foresee[] the circumstance giving rise to their dispute" and agreed that commissions would only be paid post-installation and only while the employee remained employed.[17] Applying the covenant of

---

[15] *Young Living*, 2011 UT 64, ¶ 8.

[16] *Id.* ¶ 10.

[17] The dissent attempts to frame this as a distinction between contractual obligations and remedies. *Infra* ¶ 40 (Pearce, J., concurring in part and dissenting in part). It is true that the *remedy* Mr. Vander Veur seeks is to be paid commissions he claims he had earned. But his claim, and the availability of a remedy, hinges on a finding that Groove was otherwise *obligated* to pay those commissions. And, as discussed, Mr. Vander Veur was not entitled to those commissions unless and until the contracts proceeded to installation. At the time of his termination, none of the relevant contracts had been installed. Under the compensation agreement, if those contracts had fallen through, Mr. Vander Veur would not have been compensated for the time he had spent securing them. So unless and until the contracts were installed, Groove had no

(Continued)

good faith and fair dealing to require Groove to pay Mr. Vander Veur post-termination commissions is "inconsistent with the express terms of the [compensation agreement]."[18]

*B. The parties' course of dealings and conduct demonstrate that they would not have agreed to payment of post-termination commissions*

¶13 Second, we conclude the court of appeals erred because, even were we to assume that the compensation agreement does not expressly address the situation presented in this case, we cannot say that the parties would have agreed to the contractual term Mr. Vander Veur would have us read into the agreement. Under the covenant of good faith and fair dealing, we look to the "parties' course of dealings or conduct" to determine a party's legal duty.[19] And we may only impose such duties when, based on that course of conduct, it is clear that they "undoubtedly would have agreed to the [duty] if they had considered and addressed it."[20]

¶14 Groove's course of dealings demonstrates that it never pays out post-termination commissions. Rather, it has a different sales representative take over the contract for the terminated employee, and that replacement representative generally receives the commission for the sale. So based on the parties' course of dealings, it is clear that they would not have agreed to pay for post-termination commissions.

---

obligation to pay commissions that Mr. Vander Veur had not yet earned.

[18] *Oakwood Vill.*, 2004 UT 101, ¶ 45. Importantly, this does not mean, as the dissent suggests, that Groove does not have to exercise its obligations in good faith. At-will employers have the authority to terminate employees at any time—for any reason or no reason at all—and still be acting in good faith. And Groove had no obligation to retain Mr. Vander Veur as an employee until all of his pending contracts proceeded to installation. Rather, they had the express and virtually unlimited authority to terminate him whenever they so chose.

[19] *Id.* ¶ 43.

[20] *Young Living*, 2011 UT 64, ¶ 10.

*C. Mr. Vander Veur could not have had a justified expectation in receiving commissions for post-termination commissions*

¶15 Finally, we conclude the court of appeals erred because Mr. Vander Veur could not have had a justified expectation in receiving payment for post-termination commissions. The covenant of good faith and fair dealing is also informed by "the agreed common purpose and the justified expectations of the other party."[21]

¶16 Mr. Vander Veur argues that he had a "justified expectation" in receiving the commissions for the six contracts installed after his termination. But he could not have had a justified expectation that he would receive commissions for the sales that had not yet been installed. As discussed, the plain text of the compensation agreement states that the commissions are only paid once installation is complete. Until then, he had no justified expectation of receiving a commission for those sales. And as an at-will employee, he and Groove both had "the right to terminate the employment relationship with or without notice and with or without cause at any time." So upon termination, he had a justified expectation only in unpaid commissions for sales that had already been installed.

## II. The Covenant of Good Faith and Fair Dealing May Have Application to the Showtime Bonus Agreement, if an Enforceable Contract Exists

¶17 Mr. Vander Veur also argues he had a justified expectation in receiving the Showtime bonus. This product was installed prior to Mr. Vander Veur's termination, but Groove did not receive the money until after he was terminated. This bonus was based on an alleged oral contract, separate from the compensation agreement. The district court dismissed this claim on summary judgment, concluding that the parties would not have agreed to award the bonus after termination, and alternatively, that there was no enforceable contract. The court of appeals reversed and remanded for additional proceedings, vacating the district court's dismissal on both grounds. We affirm that decision.

¶18 The district court concluded that the parties would not have agreed to pay Mr. Vander Veur a bonus after he was terminated, and that an application of the covenant of good faith and fair dealing here amounted to a "new affirmative obligation on Groove." In the

---

[21] *St. Benedict's*, 811 P.2d at 200.

alternative, the district court concluded that "there was no enforceable contract as to the *Showtime* bonus" because "there was never a meeting of the minds regarding a material contract term." The court of appeals reversed, concluding that this did not create a "new affirmative obligation" because Mr. Vander Veur was only seeking "entitlement to the bonus money based upon purported rights and obligations created by the bonus agreement itself."[22] Additionally, it vacated the district court's dismissal on the alternative ground that there was no enforceable contract.

¶19  It did so because, in the district court's summary judgment order, the court "did not discuss the relevant facts and articulate its reasoning or explain its determination in light of contract law principles."[23] Because the court of appeals concluded that it was "unable to discern the legal or the factual basis for the district court's dismissal," it vacated the dismissal on that ground and remanded for further proceedings.[24] We likewise find ourselves unable to sustain the district court's dismissal on the basis that there was no enforceable contract, and so we remand for additional proceedings.

¶20 If, after additional findings, the district court ultimately concludes that there is no enforceable contract, Mr. Vander Veur's claims should be dismissed. We have "consistently rejected the notion of a free-standing implied covenant of good faith and fair dealing in the absence of a contract."[25] So if Mr. Vander Veur

---

[22] *Vander Veur v. Groove Entm't Techs.*, 2018 UT App 148, ¶ 35, 436 P.3d 109.

[23] *Id.* ¶ 36. Additionally, this was not Groove's main argument for dismissal on summary judgment. It was merely "an aside in its summary judgment reply memorandum, underdeveloped and without any meaningful analysis of the relevant facts, pertinent contract principles, and whether the term at issue—agreement regarding post-termination payment—was, in fact, a material term whose absence would be sufficient to render the entire agreement unenforceable." *Id.*

[24] *Id.* ¶ 37.

[25] *Tomlinson v. NCR Corp.*, 2014 UT 55, ¶ 32, 345 P.3d 523.

cannot prove the existence of a contract, "he cannot establish a violation of the covenant of good faith and fair dealing" regardless of any expectation he may have had in receiving the bonus.[26]

¶21 On the other hand, if the district court determines that there was an enforceable contract, the covenant of good faith and fair dealing may well have application here. Unlike the commissions based on the compensation agreement, there is no express contractual language governing the Showtime bonus. The parties dispute when payment of that bonus would have been due. And although the bonus was not governed by the compensation agreement, that agreement would likely have informed Mr. Vander Veur's justified expectations under the covenant of good faith and fair dealing. Both the commissions and the other bonuses contemplated by the compensation agreement are payable once installation occurs. And unlike the commissions contracts, the Showtime job was installed before Mr. Vander Veur's termination. So he may have had a justified expectation that he had already earned that bonus prior to termination.

## Conclusion

¶22 The covenant of good faith and fair dealing may not be applied to contradict express contractual terms. Here, the court of appeals' application is inconsistent with the express terms of the compensation agreement and with the parties' course of dealings, and Mr. Vander Veur had no justified expectation in receiving post-termination commissions. So we reverse the court of appeals on that issue. But we affirm the court of appeals' determination to vacate the district court's dismissal of the Showtime bonus claim, and we remand for additional proceedings on that claim.

––––––––––––

JUSTICE PEARCE, concurring in part and dissenting in part:

¶23 All contracts contain an implied covenant of good faith and fair dealing. The intersection of the implied covenant and the at-will employment doctrine can be a tricky corner to navigate when it comes to commission-based compensation agreements. The majority applies the implied covenant in a manner that, I fear, will practically eliminate it in that context. Our court of appeals, on the other hand, crafted a test that appropriately balanced the interests those

---

[26] *Id.*

doctrines were designed to protect. For this reason, I would uphold the court of appeals' decision.

¶24 This causes me to concur in part and dissent in part from the majority opinion. I concur with the majority's conclusion that the court of appeals correctly remanded the claim surrounding the Showtime bonus to the district court for further proceedings. But I dissent from the decision to reverse the court of appeals and reinstate the grant of summary judgment on the implied covenant of good faith and fair dealing claims.

¶25 As the court of appeals noted, "[T]he implied covenant of good faith and fair dealing inheres in every contract," including those "associated with employment." *Vander Veur v. Groove Entm't Techs.*, 2018 UT App 148, ¶ 20, 436 P.3d 109. "Its 'core function' is to impose on parties the duty to perform" their contractual obligations in good faith, *id.* ¶ 21, and to "refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract." *Id.* (quoting *Young Living Essential Oils v. Marin*, 2011 UT 64, ¶ 9, 266 P.3d 814).

¶26 We have stated that "the parties to a contract are deemed to intend that the [contract] terms . . . be construed in a manner which assumes the parties intended that the duties and rights created by the contract should be performed and exercised in good faith." *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991). In such agreements, the covenant protects the parties' expectations, "as no one would reasonably accede to a contract that left him vulnerable to another's opportunistic interference with the contract's fulfillment." *See Young Living*, 2011 UT 64, ¶ 9. The covenant thus protects parties' expectations and their "reliance interests." *See id.*

¶27 The implied covenant of good faith and fair dealing is not, however, a basis for rewriting contract terms. It is not a tool of "judicial inference," *id.* ¶ 8, a basis for overriding express contractual provisions, *id.* ¶ 10, or a source of "new, independent rights or duties," *Brehany*, 812 P.2d at 55. In other words, the covenant cannot be invoked "on the mere basis of a judge's subjective sense of justice." *Young Living*, 2011 UT 64, ¶ 9 (citation omitted) (internal quotation marks omitted). And consistent with that role, the covenant "cannot be construed to change an indefinite-term, at-will employment contract into a contract that requires an employer to have good cause to justify a discharge." *Brehany*, 812 P.2d at 55.

¶28 These standards and limitations align our inquiry with its overarching purpose—to protect the parties' expectations based on the provisions to which they agreed, without interjecting "a code of

commercial morality" that reflects nothing more than "judicial sensibilities." *Young Living*, 2011 UT 64, ¶ 10. Accordingly, Utah law carves out a "limited" but "significant" role for the implied covenant. *Id.* ¶¶ 8, 9. Used profligately, it can create commercial uncertainty and breed costly litigation. *See id.* ¶ 8. Without it, as noted above, reasonable expectations may be undercut by opportunistic activities denying a party the "right to receive the fruits of the contract." *Id.* ¶ 9 (citation omitted) (internal quotation marks omitted).

¶29 For guidance in the covenant's application, as with any other question of contract interpretation, we look to the terms of the contract to gauge the parties' intent. What might appear to be a bad faith attempt to deny the fruits of a contract in one context may be an anticipated and authorized course of conduct in another. To determine whether the implied covenant would uphold, rather than destroy, the parties' expectations, we examine how closely the parties' contract speaks to the issue. The greater the parties' specificity, the less space there is for the implied covenant to fill. "[T]he degree to which a party to a contract may invoke the protections of the covenant turns on the extent to which the contracting parties have defined their expectations and imposed limitations on contract terms." *Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 16, 94 P.3d 193 (citation omitted).

¶30 Thus, "[b]roadly speaking, the more leeway a party has under the terms of the contract, the more contracting parties may invoke the protections of the covenant of good faith and fair dealing in the exercise of that discretion." *Id.* If contract language leaves enough discretion to permit opportunistic dismantling of the other party's ability to receive the benefit of its bargain, the implied covenant may step in to protect that party's reasonable expectations. *See id.* ¶ 17 (concluding that the jury could find a breach of contract if a party calculated "book value in accordance with GAAP," as the agreement required, but employed its discretion in that regard in a manner inconsistent with its good-faith obligation under the implied covenant).

¶31 Reciting many of these principles, the court of appeals considered the role of the implied covenant with respect to the commission-based compensation agreement in the context of Vander Veur's at-will employment. The court of appeals correctly concluded that, under Utah law, breach of the implied covenant is an available "cause of action to protect justified expectations arising from agreements attendant to an at-will employment relationship." *Vander Veur*, 2018 UT App 148, ¶ 23. And while the implied

covenant gives an employee "no right to continued tenure under an at-will employment relationship," it may protect an at-will employee's contractual interests with respect to benefits promised "under an attendant compensation agreement." *Id.* ¶ 25.

¶32 The court of appeals also concluded that to prevail on such a claim, an at-will employee would have to demonstrate that "(1) his or her employment was terminated in bad faith to deprive him or her of benefits under a compensation agreement and (2) he or she does, in fact, have a justified expectation for receiving the benefits to which entitlement is claimed." *Id.* ¶ 26. "Thus, while an employer may terminate the at-will employment relationship at any time and for any reason, the employer may not deprive an employee of commissions" she otherwise "would have received under the terms of the compensation agreement for work already performed by terminating the employee in bad faith to avoid paying those commissions or benefits." *Id.* ¶ 29. On that basis, the court of appeals vacated the grant of summary judgment on Vander Veur's implied covenant claims and remanded for further proceedings. *Id.* ¶ 33. I agree with the court of appeals.

¶33 The parties' compensation agreement speaks only loosely to the relevant question: how Vander Veur's compensation agreement interacts with his status as an at-will employee. The agreement does not expressly indicate that Groove can exercise its discretion in a fashion that would prevent Vander Veur from receiving commissions. When parties have memorialized their expectations, we are in no position to second-guess their arrangement and use the implied covenant to recraft the bargain. But absent a contract term indicating that an employee agreed to work under a compensation agreement that allowed the employer to exercise its discretion and terminate solely to prevent that employee from receiving compensation, I would conclude that the implied covenant requires Groove to exercise its contractual rights in good faith.

¶34 Vander Veur signed a number of "Employee Handbook Acknowledgments" in which he affirmed that he was an at-will employee. Vander Veur also signed a compensation agreement providing that he would be paid commissions on "Qualifying Sale[s]" and defining a "Qualifying Sale" as one where "the installation is complete." The compensation agreement also provided that it would "remain in effect as long as [Vander Veur] [was] employed by Groove."

¶35 The majority stiches these provisions together to conclude that Groove had the right to terminate Vander Veur for the sole

purpose of denying him commissions on sales he procured but for which the installation had not been completed. To reach this conclusion, the majority first holds that Vander Veur has no cause of action because the implied covenant of good faith and fair dealing would contradict the express terms of the compensation agreement. *Supra* ¶ 12.

¶36 I don't understand the amalgam of those provisions to be the type of "express" provision to which the implied covenant of good faith and fair dealing cannot adhere.

¶37 To be clear, I agree with the majority that the "Employee Handbook Acknowledgments" address the at-will nature of Vander Veur's employment, *supra* ¶ 2; that "[b]y the express language of the compensation agreement, . . . Vander Veur could only be paid for contracts that had been installed," *supra* ¶ 12; and that the compensation agreement remained "in effect" as long as Vander Veur was employed by Groove, *supra* ¶ 11. And I can understand why the majority weaves those provisions together to conclude that Vander Veur was "not . . . entitled to compensation for contracts that proceeded to installation after his termination" because "the compensation agreement [would] no longer [be] in effect." *Supra* ¶ 12.

¶38 But this conclusion simply defines the scope of the parties' obligations. It does not speak to whether Groove could avoid its obligations by terminating Vander Veur for the sole purpose of preventing him from collecting commissions. In other words, the provisions the majority relies upon neither authorize nor limit Groove's discretion to fire Vander Veur to deprive him of compensation under the agreement.

¶39 Instead of asking whether these provisions speak to whether Groove may terminate Vander Veur to avoid paying him commissions, the majority asks a different question: whether the compensation agreement requires Groove to pay post-termination commissions. *Supra* ¶ 12. That, however, is not the relevant inquiry. The space the implied covenant fills is on the issue of good faith — that is, whether Groove must exercise its obligations in good faith.

¶40 This distinction matters because it speaks to the difference between obligations under a contract, and the remedy for breach of a contract. Vander Veur doesn't allege that Groove violated the implied covenant by failing to pay him post-termination commissions. Vander Veur contends that Groove breached the implied covenant by firing him so that it did not have to pay him commissions on sales he procured. And he asks for an award of

damages flowing from that alleged breach in the form of the commissions he would have received had Groove not terminated him.

¶41 The majority sees this as contradicting the contract the parties signed, but remedies may often appear to conflict with express contractual terms. For example, if a contract requires the sale of a piece of art, but the seller refuses to transfer the painting, the seller may have to pay money damages to the buyer. And, of course, that may be contrary to terms of the contract. After all, nothing in the contract may have contemplated that the seller would pay anything to the buyer. By ordering an award of money damages, a court is not rewriting the parties' contract; it is fashioning a remedy to compensate the non-breaching party. By defining the question as it does, the majority never engages with the court of appeals' analysis of the intersection between Vander Veur's compensation agreement and his status as an at-will employee. And the majority's framing guts the covenant's application. The "fruits" of a commission agreement are the employee's commissions. If the contractual provisions at issue here preclude an employee from arguing that the implied covenant has no application when it acts to prevent the employee from obtaining the fruits of his bargain, the implied covenant of good faith and fair dealing becomes a hollow doctrine.[27]

---

[27] We have sometimes spoken in terms of the implied covenant as imposing a term "to perform in the good faith manner that the parties surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their dispute." *See, e.g.*, *Young Living*, 2011 UT 64, ¶ 8. This language functions better as a rhetorical device than as a legal test. Here, for example, we don't have the evidence we would need to answer that question. That is, we don't know whether, had Groove asked, Vander Veur would have agreed to a provision that stated Groove could terminate him solely to avoid paying commissions on sales he had procured.

The answer to what the parties "surely" would have agreed to might be found in information not before the district court, such as the ease with which Groove could hire sales personnel, Vander Veur's perceived value to Groove, and the number of job offers, if any, that Vander Veur had at the time. Without a sense of that, it seems difficult to predict what the parties would have done. And a legal test that requires proof of what would "surely" have happened before we recognize a duty to act in good faith has the power to all but eliminate the implied covenant from our jurisprudence. For this

(Continued)

¶42 Indeed, it is not hard to imagine ways in which a bootless implied covenant would permit an employer to engage in unchecked mischief. For example, under the majority's reasoning, a homeowner could hire a neighborhood teen to mow his lawn. He could tell the teen that he would pay her $30 for the job as long as she understood: (1) she wouldn't be paid until she mowed the entire lawn; and (2) he could terminate her at any time. The homeowner could then stand on the lawn to watch her work, wait until she pushed the mower towards the grass on which he was standing, and then terminate her just as she approached that final patch of grass. When she asked for her $30, arguing that she should be paid since she had mowed the entire lawn except for the ground under the homeowner's feet, and would have mowed that if he had not stopped her, the homeowner could tell her that he didn't have to pay her because he could terminate her at any time and that her right to get paid was conditioned on her mowing the entire lawn. And if he was feeling generous, the homeowner might advise her that next time she should bargain for better protections before agreeing to mow someone's lawn.[28]

¶43 Similarly, a summer sales employer could offer a longevity bonus for any employee who works for the company through August 31, and then terminate all employees at 11:59 p.m. on August 30 simply to avoid paying the bonus. Or a company could terminate an employee the day before her stock options vest just to prevent her from obtaining an ownership interest in the enterprise. The implied covenant exists to provide a remedy for those who find themselves improperly deprived of the benefits flowing from the contracts they

reason, I believe that language is best understood as an illustrative principle of how we apply the implied covenant—we won't infer a term that the parties would never have agreed to—rather than a test to determine whether the covenant should apply at all.

[28] This highlights another important function of the implied covenant of good faith and fair dealing—it promotes efficiency. If a party cannot rely on the implied covenant to protect the justified expectations about how the parties will perform their contractual duties, parties will have to be more explicit in their contracts. In negotiations, parties will have to try and anticipate and allocate risks for the myriad ways in which a party might act in bad faith to deny the other the benefit of the contract. This will lead to protracted negotiations, more cumbersome contracts, and increased transaction costs.

enter and perform in good faith. We should apply the doctrine in a fashion that protects those justified expectations.

¶44 For similar reasons, I disagree with the majority's alternative conclusion that the parties' course of dealings demonstrates that they would not have agreed to payment of post-termination commissions. *Supra* ¶ 14. The majority opines that "Groove's course of dealings demonstrates that it never pays out post-termination commissions." *Supra* ¶ 14. For the reasons just discussed, that is not the proper question. The relevant inquiry centers on how the parties expected Groove would use its unilateral power to terminate Vander Veur's employment.[29] Nothing in the record before us suggests that the parties' course of dealing would answer that question.

¶45 Thus, unlike the majority, I would not conclude that the parties defined their expectations of how Vander Veur's at-will employment would interact with the compensation agreement in a way that would bar application of the implied covenant. I do not see an express contractual provision that the implied covenant would overwrite.

¶46 And in the absence of defined expectations, I would conclude that the implied covenant gives Vander Veur the opportunity to try and prove that Groove terminated him in bad faith for the purpose of denying him commissions on sales he had procured. Or, in other words, that Groove terminated him to destroy his ability to enjoy the fruits of the compensation agreement.

¶47 The court of appeals designed a test that would have permitted Vander Veur to attempt to show that genuine issues of material fact existed with respect to that question. I would affirm that holding and remand to permit the district court to assess whether Vander Veur could point to evidence sufficient to meet his summary judgment burden.

––––––––––––––

[29] This also disposes of the majority's contention that Vander Veur had no justified expectation of receiving post-termination commissions. Vander Veur's expectation was not that Groove would pay him commissions after he was no longer employed. For example, Vander Veur does not argue the contract entitled him to commissions if he voluntarily left before the jobs were installed. Vander Veur argues that he justifiably expected that Groove would not terminate him simply to keep him from receiving commissions on work in the pipeline.