IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Debbie A. Webster, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellant, | ) | Case No. 20110235-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| JP Morgan Chase Bank, NA, | ) | (November 16, 2012) |
| | ) | |
| Defendant and Appellee. | ) | 2012 UT App 321 |

-----

Third District, Salt Lake Department, 090909315
The Honorable Sandra N. Peuler

Attorneys:     Debbie A. Webster, Murray, Appellant Pro Se
               Scott M. Lilja, Salt Lake City, for Appellee

-----

Before Judges Davis, McHugh, and Roth.

ROTH, Judge:

¶1     Debbie A. Webster appeals from the dismissal of her complaint, in which she alleged seven causes of action against JP Morgan Chase Bank, NA (Chase) for contract, fraud, and intentional tort. The district court dismissed the contract claims on the basis that Webster could not rely on an oral modification of the contract, the fraud claims on the basis of unreasonable reliance and failure to plead fraud with particularity, and the tort claims on the basis that Webster had not alleged any intentional conduct by Chase. Webster argues that her complaint alleged sufficient facts to survive a motion to dismiss. We reverse and remand for further proceedings on the contract and fraud claims but affirm the dismissal of her intentional tort claims.

¶2    On appeal from a motion to dismiss for failure to state a claim for relief, "we give the trial court's ruling no deference and review it under a correctness standard." *MBNA Am. Bank, NA v. Goodman*, 2006 UT App 276, ¶ 4, 140 P.3d 589 (mem.) (citation and internal quotation marks omitted); *see also* Utah R. Civ. P. 12(b)(6) (permitting a defendant to move for dismissal if the plaintiff "fail[s] to state a claim upon which relief can be granted"). "When determining whether a trial court properly granted a 12(b)(6) motion to dismiss, we accept the factual allegations in the complaint as true and consider them and all reasonable inferences to be drawn from them in a light most favorable to the plaintiff." *Goodman*, 2006 UT App 276, ¶ 4 (footnote, citation, and internal quotation marks omitted).

¶3    In March 2007, Webster opened a home equity line of credit with Washington Mutual Bank (Washington Mutual) to provide her with access to funds with which she could attend nursing school. Webster met with a Washington Mutual representative on three occasions, and she explained each time that she would be giving up her employment to attend school. On each occasion, the representative explained that the loan was based on the value of Webster's home, the equity she had built in it, and her excellent credit history. The Washington Mutual representative also assured Webster that her unemployment would not prevent her from obtaining advances on the loan and that she would not need to provide the bank with any pay stubs or W-2s to maintain an active account or to draw on her line of credit. On the third occasion, Webster executed a Washington Mutual Equity Plus Agreement and Disclosure (the Agreement). The Agreement stated in section 17 that "[Webster] will provide [Washington Mutual] with a current financial statement, a new credit application, or both, at any time upon our request." A separate section of the Agreement, section 14(b)(iii), explained that Washington Mutual reserved the right to suspend advances on the line of credit if Webster was "in default of a material obligation of th[e] Agreement," which included failure "to provide documents . . . such as updated financial information." Webster withdrew funds from the line of credit and made timely payments. Washington Mutual apparently never requested any updated financial information from her, in the form of a current financial statement or otherwise.

¶4    In September 2008, however, the Federal Deposit Insurance Corporation (FDIC) took Washington Mutual into receivership. A number of Washington Mutual's assets, including Webster's home equity line of credit, were sold to Chase. On March 6, 2009,

Chase sent Webster a letter on Washington Mutual letterhead. The letter requested that she "help updat[e her] financial information" by "sign[ing] the enclosed Internal Revenue Service (IRS) Form 4506-T," which "allow[ed Chase] to obtain a summary of a specified federal tax return," and by "[p]rovid[ing] a copy of a recent paystub . . . and any additional current income documentation [Webster] would like to provide." The letter then directed her to return the items to "Washington Mutual Bank, a division of JP Morgan Chase Bank." When Webster failed to respond to this letter, or to a follow-up letter on March 24, Chase suspended her account. After informal attempts to resolve the issue failed, Webster filed this action, asserting claims for breach of contract and breach of the covenant of good faith and fair dealing (collectively, the contract claims); fraud and fraudulent inducement (collectively, the fraud claims); and tortious interference with economic relations, tortious interference with prospective business relations, and intentional infliction of emotional distress (collectively, the intentional tort claims) against Chase.[1]

---

1. Chase invites this court to take judicial notice of its purchase and assumption agreement with the FDIC, which, Chase asserts, provides that the FDIC retains liability for any claims by borrowers arising from the loans Chase acquired from Washington Mutual. We decline to do so for two reasons. First, although Chase raised the purchase and assumption agreement as a defense in a footnote to its memorandum supporting its motion to dismiss, it did not attach a copy of that agreement to the memorandum nor has it pointed to any place in the record where it argued, or the district court considered, the purchase and assumption agreement as a defense. *Cf. 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (noting that to preserve an issue for appellate review, a party must present the issue to the district court in a manner that allows it an opportunity to rule). Second, while it is apparent that Chase acquired the Agreement some time after its origination, Webster treats Chase and Washington Mutual as one and the same, presumably based on the fact that Chase continued to correspond with her as Washington Mutual. Because we accept the factual allegations in the complaint as true when reviewing a motion to dismiss, we do not consider whether Chase or Washington Mutual or the FDIC is the more appropriate defendant but rather look only to whether Webster has stated a claim against the named defendant—in this case, Chase. In the absence of a preserved defense that Chase was the wrong defendant, we accept Webster's treatment of Washington Mutual and Chase as the same entity for purposes of appeal. Nevertheless, this limited acceptance of

(continued...)

¶5      On Chase's motion, the district court dismissed all seven of Webster's claims, and Webster appealed. Webster has narrowly attacked the court's rulings with respect to each category of claims, and Chase has commensurately responded. Our review is accordingly limited to the specific challenges presented by the parties. We offer no opinion on the overall viability of the complaint or the merits of Webster's claims. Instead, we leave it to the parties and the trial court to resolve the remaining issues through appropriate proceedings on remand.

## I. The Contract Claims

¶6      The district court dismissed Webster's contract claims on the basis that "the purported promises alleged [to be breached] . . . are at odds with, and contrary to, the terms of the written agreement between the parties." It reasoned that "there cannot be a reasonable reliance" on "any oral promise that [Webster] wouldn't ever have to [submit financial documentation to have access to the home equity] funds" in the face of "documents that are contrary to that promise." The court further explained the dismissal of the breach of the covenant of good faith and fair dealing claim as being due to Chase's letter providing Webster with

> a choice as to what she could provide [in response to Chase's request for updated financial documentation] and there was nothing . . . that limited her to providing only certain [financial documents]. In fact, [Webster] didn't try to file anything and so because of that, . . . [Chase] was entitled to suspend her loan and because [it] ha[d] the right to suspend the loan, there was no breach . . . .

We conclude that these claims should not have been dismissed.

¶7      The district court's reasoning for dismissing the contract claims seem to encompass two subconclusions: one, that a written agreement cannot be orally modified

---

1. (...continued)
Webster's characterization of the entities' relationship in her complaint does not preclude Chase from asserting the purchase and assumption agreement as a defense on remand.

contemporaneous with its execution without those amendments being memorialized in writing and, two, that Webster's reliance upon such a modification was not reasonable. According to Webster, the written contract was simultaneously modified by oral agreement to preclude Chase's enforcement of section 17 of the contract. Webster asserts that Chase breached the modified agreement when it requested the IRS Form 4506-T and her current pay stubs. In making this argument, Webster does not make any effort to establish that such a contract modification is legal under Utah law. But neither does Chase expressly assert that a written contract can never be orally modified contemporaneous with the execution of the written agreement.[2] Instead, it defends the district court's dismissal on two related grounds: its own compliance with the Agreement as written and Webster's lack of reasonable reliance on any oral modification to the Agreement. It is not readily apparent whether Chase intended these to be separate reasons for affirming even if a written contract can be orally modified in some circumstances or if its reasoning identifies separate facets of a more general claim that written agreements cannot be simultaneously orally modified. Regardless of the relationship between its arguments, Chase has not responded with an alternative basis for upholding the dismissal of the contract claims.

¶8      Chase argues that Webster failed to state a claim for breach of contract because she could not establish that a breach occurred when it merely exercised rights afforded

---

2. Because the parties have not addressed the issue, we express no view as to whether the terms of a written contract may be modified by verbal representations made at the time of its execution or whether the issue is more appropriately raised under the principles of estoppel. *See generally Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶¶ 1, 26–27, 38, 158 P.3d 1088 (reversing the grant of summary judgment to the insurance company on the insured's claim of estoppel where the agent misrepresented certain terms of the written insurance policy at the time the parties agreed to it because "the question of whether or not . . . reliance on the agent's [oral] misrepresentations of the scope of coverage under the policy was reasonable" in light of a written agreement to the contrary "is one of fact"). Instead, we reserve the issue for a day when it has first been resolved in the district court and then adequately briefed and presented on appeal.

it by the terms of the written Agreement. According to the Agreement, Chase could request "a current financial statement." Chase asserts that a "financial statement" would by ordinary definition include income and tax information. Webster counters that even if the term "financial statement" would ordinarily include such things, Chase orally promised it would not ask for her pay stubs or W-2s. Neither party has adequately analyzed on appeal whether the contract term "financial statement" encompasses the IRS Form 4506-T and pay stubs that Chase specifically requested from Webster and whether Webster was therefore obligated by the Agreement to provide them at Chase's request. Instead, each side makes assumptions about the meaning of the term "financial statement," and neither addresses whether the term could be ambiguous. Because the parties have failed to appropriately brief this issue, we cannot determine whether Chase is correct that Webster failed to state a claim for breach of contract and decline to affirm the district court on this basis.

¶9      Chase also submits that we should affirm the district court based on the court's own reasoning, i.e., that Webster could not reasonably have relied on an oral promise when a written agreement attached to the complaint provides to the contrary. As authority for this proposition, Chase relies on the Utah Supreme Court's decision in *Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060 (Utah 1996).

¶10      In *Gold Standard*, the parties had entered into a written agreement, in which Gold Standard, Inc. (GSI) agreed to contribute 25% and Getty Oil Co. (Getty) agreed to contribute 75% to a joint mining venture in return for profits in proportion to their contributions. *Id.* at 1062. When GSI was unable to come up with its share, Getty exercised its contractual right to convert GSI from a participating interest holder to a net profits interest holder with a reduced interest in the project. *Id.* Despite the conversion, Getty's district manager informed GSI that "'nothing was really changing' and that GSI could reenter as a twenty-five percent interest holder if it acquired financing." *Id.* at 1063. "Numerous [subsequent] letters to GSI from Getty[, however,] stated that the [oral] promise made . . . was not a firm commitment, but only an agreement to consider allowing GSI to reacquire its twenty-five percent participating interest." *Id.* GSI brought suit alleging fraud, and following a trial, the jury found in favor of GSI, a verdict that the trial court overturned on Getty's motion because "'[GSI] was not entitled as a matter of law to rely on any inconsistent contemporaneous oral promises of re-entry made by

20110235-CA                                6

Getty. . . . [and] under the facts and circumstances of this case reasonable minds could not find that [GSI] so relied.'" *Id.* at 1063, 1066 (last alteration in original). The Utah Supreme Court affirmed the trial court's ruling, concluding that "[e]ven if Getty orally made the alleged fraudulent promise . . . , it is clear that GSI could not reasonably rely on that promise in light of the correspondence following that meeting. These letters explicitly indicated that the situation was not as GSI understood it to be." *Id.* at 1067. The supreme court followed that conclusion with the more general proposition that "a party cannot reasonably rely upon oral statements by the opposing party in light of contrary written information." *Id.* at 1068 (citing *Rubey v. Wood*, 373 P.2d 386, 387–88 (Utah 1962), in which the Utah Supreme Court affirmed a directed verdict in favor of the buyers because under the facts of the case, sellers could not reasonably rely on the buyers' oral representations in light of the written agreement).

¶11     We do not read *Gold Standard* as dispositive in this case for two reasons. First, the decision regarding reliance in *Gold Standard* came after a full trial on the merits. *See id.* at 1066–69. In other words, GSI had the burden of establishing by clear and convincing evidence all of the elements of fraud, including reliance, and simply could not do so as a matter of law given the evidence presented. *See generally Andalex Res., Inc. v. Myers*, 871 P.2d 1041, 1046 (Utah Ct. App. 1994) ("Fraud claims must be proven by clear and convincing evidence."). In the instant case, the question is simply whether Webster alleged sufficient facts regarding her breach of contract and breach of covenant of good faith and fair dealing claims to survive a motion for dismissal. *See generally Mackey v. Cannon*, 2000 UT App 36, ¶ 9, 996 P.2d 1081 ("When reviewing a motion to dismiss based on [r]ule 12(b)(6), an appellate court must accept the material allegations of the complaint as true, and the trial court's ruling [to dismiss] should be affirmed only if it clearly appears that the complainant can prove no set of facts in support of his or her claims." (citation and internal quotation marks omitted)).

¶12     Second, in *Gold Standard*, the parties' agreement was memorialized in writing after the oral negotiations *and* that writing expressly communicated to GSI that the agreement was not as it had believed it to be. *See* 915 P.2d at 1063, 1067–68 (following the March 2 meeting, at which GSI was told that it could reenter as a 25% interest holder if it acquired funding, with written correspondence on March 3, March 12, March 24, and May 7 that indicated that payment would not automatically entitle GSI to revert to

its prior status but would make it eligible to revert only with both parties' approval); *see also Mikkelson v. Quail Valley Realty*, 641 P.2d 124, 125 (Utah 1982) (providing buyer with a written appraisal as part of the closing process, which buyer acknowledged receiving, indicating that the property's square footage was approximately 400 square feet less than he was initially told when he earlier attended the property's open house).

¶13   Chase does not acknowledge the factual distinction between *Gold Standard* and this case regarding the timing of the oral promise and the written agreement but instead asserts that Webster could not reasonably have relied on the oral promise where it was contradicted by the written agreement. Chase supports its position with the supreme court's statement in *Gold Standard* indicating that reliance upon an oral statement in the face of written documentation to the contrary is not reasonable. *See* 915 P.2d at 1068. Although that statement in isolation seems to support Chase's position, Chase has not demonstrated that it applies here, where the facts are significantly different from those presented in *Gold Standard* and *Rubey v. Wood*, 373 P.2d 386 (Utah 1962), the case on which *Gold Standard* relies in stating this proposition. For example, unlike in those two cases, the written agreement in this case does not expressly contradict Webster's understanding of the oral agreement. Rather, it states that Chase may request "a current financial statement," without defining what a "financial statement" includes or excludes. The fact that the bank's representations might conflict with certain terms of the written contract certainly calls into question the reasonableness of Webster's reliance on the oral representations. But, given the circumstances, the discrepancies between the two do not alone establish that her reliance was unreasonable as a matter of law. *See Gold Standard*, 915 P.2d at 1067 ("[T]he question of reasonable reliance is usually a matter within the province of the [finder of fact]."); *Dugan v. Jones*, 615 P.2d 1239, 1242, 1245–46, 1250 (Utah 1980) (reversing dismissal as a matter of law where the Joneses had presented sufficient evidence to recover on their fraud claim if the fact finder had believed the evidence they presented), *superseded on other grounds by rule as stated in Arnold v. Curtis*, 846 P.2d 1307 (Utah 1993). Because the stated basis for the dismissal of Webster's breach of contract and breach of the covenant of good faith and fair dealing claims was that the written contract contradicted the oral agreement, which appears to turn on the issue of whether Webster's reliance on the simultaneous oral

representations was reasonable as a matter of law, we reverse the grant of dismissal under rule 12(b)(6) and remand for further proceedings.

¶14 The court's alternative basis for dismissing the breach of good faith and fair dealing claim was that Webster had a "choice" in what documents to provide. This rationale does not appear to be supported by the allegations of the complaint. Webster alleged that Chase "demanded that . . . Webster provide Chase with an . . . 'IRS[] Form 4506-T' and 'a recent pay-stub'" in violation of its promise not to seek pay stubs or W-2s. She attached copies of the letters in which Chase made this demand to the complaint. Chase did not deny that it specifically requested the pay stub and the IRS Form 4506-T nor did it ever allege that Webster could have satisfied her obligation through providing alternative documentation of her choice. Rather, Chase's letters permitted Webster to submit "any *additional* current income documentation [she] would like to provide" in addition to the IRS Form 4506-T and the pay stub, not in lieu of those documents. (Emphasis added.) Thus, "accept[ing] the factual allegations in the complaint as true and consider[ing] them and all reasonable inferences to be drawn from them in a light most favorable to the plaintiff," we must conclude that dismissal on the basis that Webster had a choice was inappropriate. *See MBNA Am. Bank, NA v. Goodman*, 2006 UT App 276, ¶ 4, 140 P.3d 589 (mem.) (citation and internal quotation marks omitted). Because the contract claims were not properly dismissed, we remand for further proceedings.

## II. Fraud Claims

¶15 The district court dismissed Webster's fraud claims for two reasons. The first mirrored one of the court's bases for dismissing her contract claims, i.e., that she could not reasonably have relied on Washington Mutual's oral promises in light of the terms of a contemporaneous written agreement; and the second was because she failed to plead fraud with particularity as required by rule 9 of the Utah Rules of Civil Procedure. We conclude that neither basis supports the dismissal, and because Chase has not offered an alternative basis on which we can affirm, we remand to the district court for further proceedings.

¶16  To state a claim of fraud, a plaintiff must allege

> (1) that a representation was made (2) concerning a presently
> existing material fact (3) which was false and (4) which the
> representor either (a) knew to be false or (b) made recklessly,
> knowing that there was insufficient knowledge upon which
> to base such a representation, (5) for the purpose of inducing
> the other party to act upon it and (6) that the other party,
> acting reasonably and in ignorance of its falsity, (7) did in
> fact rely upon it (8) and was thereby induced to act (9) to
> that party's injury and damage.

*Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35 (citation and internal quotation marks omitted). First, Webster's fraud claims should not have been dismissed on the basis that she could not meet the reliance element. For the reasons stated above in the contract claims section, we disagree with the court's determination that the claims fail because Webster could not reasonably have relied, as a matter of law, on an oral promise that was contrary to a contemporaneous written contract.

¶17  We also reject Chase's argument that Webster's claims fail because "the alleged misrepresentation did not concern a presently existing fact" when it only "guaranteed that *in the future* she would have access to her [home equity line of credit] account." (Emphasis added.) Chase acknowledges that a promise of future performance can sustain a claim of fraud when "at the time of the representation, [the party making the representation] did not intend to perform the promise and made the representation for the purpose of deceiving the promisee." *Andalax Res., Inc. v. Myers*, 871 P.2d 1041, 1047 (Utah Ct. App. 1994); *see also Von Hake v. Thomas*, 705 P.2d 766, 770 (Utah 1985) ("We have repeatedly held that a promise of future performance, when made with a present intent not to perform and made to induce a party to act in reliance on that promise, constitutes actionable . . . fraud."), *superseded on other grounds as stated in State v. Hurst*, 821 P.2d 467, 469 n.1 (Utah Ct. App. 1991). But to make such a claim, Chase asserts, "Webster ha[d] to allege facts and circumstances suggesting that defendant knew . . . the alleged representations of future performance were false." (Citation and internal quotation marks omitted.) *See generally Franco v. Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 36, 21 P.3d 198 ("To state a claim for fraud, a plaintiff must plead not only that the defendant made a material representation that was false, but also that

the defendant either *knew* the representation to be false or made the representation recklessly, *knowing* that he or she had insufficient knowledge upon which to base such a representation."). We conclude that Webster alleged sufficient facts to make such a showing.

¶18   Fraud claims generally must be pled with particularity. *See* Utah R. Civ. P. 9(b). Intent, however, must only be averred generally, i.e., in accordance with rule 8 of the Utah Rules of Civil Procedure. *See id.* ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally."); *id.* R. 8 (providing the "[g]eneral rules of pleadings"). Under rule 8, "all that is required is that the pleadings be sufficient to give notice of the nature and basis of the claim asserted and a general indication of the type of litigation involved." *Gudmundson v. Del Ozone*, 2010 UT 33, ¶ 40, 232 P.3d 1059 (citation and internal quotation marks omitted). With regard to intent, Webster alleged that Chase "falsely promised [her] that she would have access to her [home equity line of credit] account, while she was attending Nursing School, [when] Chase knew that these promises were not true and that it had no intention of honoring [them]." She supports the allegation that the false promises were attributable to Chase by attaching to her complaint two letters demanding that she provide the IRS Form 4506-T and her current pay stub. *See generally Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 10, 104 P.3d 1226 ("[D]ocuments attached to a complaint are incorporated into the pleadings for purposes of judicial notice" and may properly be considered by the district court in deciding a motion to dismiss). Both letters were printed on Washington Mutual letterhead, bore Washington Mutual signature lines, and described Washington Mutual as a division of Chase. Thus, Webster's allegations generally allege fraudulent intent and are sufficient to put Chase on notice of the basis for Webster's claim against it.

¶19   Regarding the remaining elements of fraud, we conclude that Webster's amended complaint sufficiently complies with the particularity requirement of rule 9.[3]

---

3. Webster greatly expanded the details of her allegations in an amended complaint filed during the course of the dismissal proceedings. Although Webster filed a formal motion to amend her complaint, the district court never ruled on it, presumably because Webster never submitted the motion for decision. Nevertheless, "[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is

(continued...)

Rule 9 requires that a plaintiff not only allege facts to establish the elements of a fraud claim but also recite "[t]he relevant surrounding facts," such as the identity of the person "who made the alleged misrepresentation[]" and "the time and location at which it was uttered." *Coroles v. Sabey*, 2003 UT App 339, ¶¶ 22, 28 & n.15, 79 P.3d 974 (first alteration in original) (citation and internal quotation marks omitted); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (requiring a complaint containing an allegation of fraud to include "the who, what, when, where, and how" to meet the particularity requirement of the similar federal rule 9). In connection with her fraud and fraudulent inducement claims, Webster's amended complaint sets forth adequately detailed facts on each element. It identifies March 22, 26, and 30, 2007, as the dates on which Jeanette Roberts, a Washington Mutual employee at the 9th Street Marketplace location in Murray, Utah, made the representations that Washington Mutual would not require her to provide certain financial documentation but intended to rely instead on the value of the home and its equity. The purpose of those promises, she asserts, was to induce her into entering the Agreement, and she did so in reliance on them. As a result of her entering the Agreement, Webster avers that she gave up her employment and incurred "substantial" expenses in entering a nursing program that, without access to the home equity funds, she may not be able to complete. The complaint therefore satisfies the heightened pleading requirement, and Webster's claims should not have been dismissed on that basis. Because Webster's fraud claims were not properly dismissed, we remand for further proceedings.[4]

---

3. (...continued)
served." Utah R. Civ. P. 15(a); *see also Turville v. J & J Props., LC*, 2006 UT App 305, ¶ 28, 145 P.3d 1146 ("[A] motion to dismiss does not constitute a responsive pleading, and thus, a party may still amend once without leave of court after a defendant files a motion to dismiss."). On appeal, the parties have focused only on the amended complaint in arguing their opposing positions, and we limit our analysis to that pleading.

4. Because Webster's amended complaint met the particularity requirement of rule 9, her argument that she "should have been given the opportunity . . . to file an amended complaint" is moot.

### III. The Intentional Tort Claims

¶20     Finally, the district court dismissed Webster's claims for tortious interference with economic relations and tortious interference with prospective business relations and her claim for intentional infliction of emotional distress because Webster "failed to plead any intentional conduct by Chase." We affirm their dismissal on the basis that Webster has not adequately challenged that decision on appeal.

¶21     In her opening brief, Webster includes these three intentional tort claims as subjects of appeal. However, Webster never identifies any error in the court's decision on these claims but simply asserts as a general proposition that because the rule 12(b)(6) standard requires the court to accept her factual allegations as true and draw reasonable inferences in her favor, the district court had to accept her position that Chase committed these torts. Further, Webster mentions the intentional tort claims only three times in her brief, each time in the context of explaining that her complaint contained causes of action for tortious interference and intentional infliction of emotional distress and that the claims were dismissed. She does not undertake any analysis addressed to why dismissal of these claims was inappropriate. *See generally Allen v. Friel*, 2008 UT 56, ¶ 7, 194 P.3d 903 ("If an appellant fails to allege specific errors of the lower court, the appellate court will not seek out errors in the lower court's decision."). In her reply brief, Webster expressly abandons her appeal of the dismissal of the tortious interference with economic relations claim, stating, "After consulting with my attorney in the district court, I [have] decide[d] not to appeal the denial of my claim for Tort[i]ous Interference with Economic Relations." And she does not even address the tortious interference with prospective business relations cause of action. With respect to her intentional infliction of emotional distress claim, Webster makes some effort in her reply brief to demonstrate that the claim was adequately pled. The reply brief, however, is reserved for "answering any new matter set forth in the opposing brief," not for making an argument in the first instance. *See id.* ¶ 8 (citation and internal quotation marks omitted). "It is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court." *Id.* (citation and internal quotation marks omitted). Accordingly, we uphold the dismissal of the intentional tort claims.

¶22    For the foregoing reasons, we reverse the dismissal of Webster's contract and fraud claims and remand for further appropriate proceedings. We affirm the dismissal of her tortious interference and emotional distress claims.[5]

_____

Stephen L. Roth, Judge

-----

¶23    WE CONCUR:

_____

James Z. Davis, Judge

_____

Carolyn B. McHugh, Judge

---

5. Following briefing, Webster filed supplemental briefing pursuant to rule 24(j) of the Utah Rules of Appellate Procedure, in which she simply identified by name and case number several other cases in various parts of the country in which Chase is a party. Webster "ask[ed] that the Court read and consider these cases, the facts of those cases, and the law cited in them when deciding my appeal." It is not apparent from the citations that any identified actual decisions made by any court; rather, they appear to be no more than court docket numbers for cases filed in the respective jurisdictions. An appellate court is not equipped to, nor ought it, conduct inquiries into the ongoing proceedings of trial courts in this or any other jurisdiction to determine whether they have some relevance to a particular case on appeal. As a consequence, Webster's supplemental brief failed to comply with rule 24(j), and we therefore do not consider it in making our decision. *See generally* Utah R. App. P. 24(j) (permitting a party to submit pertinent legal authority that comes to the party's attention after briefing by filing a letter that includes citation to that supplemental authority and reason for its submission).

20110235-CA                            14