**2013 UT App 175**

# THE UTAH COURT OF APPEALS

SCOTT SNOW,
Plaintiff, Appellant, and Cross-appellee
*v.*
CHARTWAY FEDERAL CREDIT UNION,
Defendant, Appellee, and Cross-appellant.

Memorandum Decision
No. 20120215-CA
Filed July 18, 2013

Fourth District, American Fork Department
The Honorable Christine S. Johnson
No. 100105167

Brian W. Steffensen, Attorney for Appellant and
Cross-appellee
Adam C. Buck and David P. Williams, Attorneys
for Appellee and Cross-appellant

JUDGE CAROLYN B. MCHUGH authored this Memorandum
Decision, in which JUDGES WILLIAM A. THORNE JR. and
MICHELE M. CHRISTIANSEN concurred.

McHUGH, Judge:

¶1 Scott Snow appeals the district court's dismissal of his claims for breach of the implied covenant of good faith and fair dealing and negligent infliction of emotional distress.[1] We affirm.

---

1. Chartway Federal Credit Union (Chartway) cross-appeals, asserting that there are additional grounds under which the district court could have dismissed those claims. A cross-appeal is unnecessary where the appellee seeks "to uphold the trial court's

(continued...)

¶2    In January 2007, Snow obtained a construction loan from Tooele Federal Credit Union for $747,900 to build a new residence on property located in Highland, Utah (the Property).[2] The loan was evidenced by a promissory note (the Note) and secured by a trust deed recorded against the Property. On June 2, 2008, Snow obtained a modification of the Note, which increased the principal of the loan to $926,285. Thereafter, Tooele Federal Credit Union changed its name to Heritage West Federal Credit Union (Heritage).

¶3    After Snow began to have difficulty making his loan payments, Heritage agreed to reduce the loan's interest rate for one year. Although the written modification of the loan agreement indicates that the interest rate would revert to its original percentage on April 25, 2010, Snow relied on "assurances from Heritage that [Snow] would be able to sit down again in another year to discuss the reduction in the interest rate." When Snow still could not make his loan payments, he approached Heritage about the possibility of finding someone to assume the loan. Heritage

---

1. (...continued)
ruling on grounds that were raised but rejected below." *Nova Cas. Co. v. Able Constr., Inc.*, 1999 UT 69, ¶ 7, 983 P.2d 575. Because we affirm the decision of the district court on the grounds that are the subject of the main appeal, we need not consider the additional grounds raised by Chartway. *See Cox v. Cox*, 2012 UT App 225, ¶ 21, 285 P.3d 791 ("An issue is moot when resolution of it cannot affect the rights of the parties.").

2. "[W]e accept the factual allegations in the complaint as true and consider them and all reasonable inferences to be drawn from them in a light most favorable to [Snow]" when determining whether the district court properly granted Chartway's rule 12(b)(6) motion to dismiss. *See Webster v. JP Morgan Chase Bank, NA*, 2012 UT App 321, ¶ 2, 290 P.3d 930 (mem.) (citation and internal quotation marks omitted).

provided Snow with terms it would require in any assumption transaction, which "did not specify that the loan amount could be no more than the amount Snow owed under the loan." After Snow presented a "ready, willing and able buyer," Heritage changed the terms needed for assumption. Specifically, Heritage insisted on "a $300,000 . . . down payment requirement for the buyer, plus a $300,000 required certificate of deposit . . . to be deposited into Heritage during the entire life of the loan." Heritage required these additional terms because it was unwilling to "do the deal unless [its] exposure [was] less than $700,000." As a result, the buyer "walked away from the deal."

¶4    Heritage later went out of business, and its assets were liquidated. On December 31, 2009, Chartway purchased Heritage's "assets, loans and shares." In January 2010, Snow approached Chartway to inquire about the possibility of a short sale of the Property.[3] Chartway approved the short sale in April, subject to a closing deadline in June. The buyers "backed out" of the transaction before closing. Thereafter, Snow tendered the deed to the Property in lieu of foreclosure, but Chartway refused to accept it. Snow eventually defaulted on the loan, and Chartway initiated foreclosure proceedings, appointed a substitute trustee, and scheduled a trustee's sale for October 25, 2010.

¶5    Three days before the scheduled trustee's sale, Snow filed a complaint against Chartway. Snow later filed an amended complaint, and on March 4, 2011, Snow filed a second amended complaint (the Second Amended Complaint). The Second Amended Complaint alleged causes of action against Chartway for negligent misrepresentation, fraudulent nondisclosure, breach of

---

3. "A short sale, also known as a pre-foreclosure sale, is when you sell your home for less than the balance remaining on your mortgage." *Short Sale*, KnowYourOptions.com by Fannie Mae, http://www.knowyouroptions.com/avoid-foreclosure/options-to -leave-your-home/short-sale (last visited July 10, 2013).

the implied covenant of good faith and fair dealing, and negligent infliction of emotional distress.[4] On August 15, 2011, Chartway moved to dismiss the Second Amended Complaint pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The district court granted the motion to dismiss and Snow filed a timely appeal.

¶6      On appeal, Snow confines his claim of error to the district court's dismissal of his claims for breach of the implied covenant of good faith and fair dealing and negligent infliction of emotional distress.[5] "On appeal from a motion to dismiss for failure to state a claim for relief, we give the trial court's ruling no deference and review it under a correctness standard." *Webster v. JP Morgan Chase Bank, NA*, 2012 UT App 321, ¶ 2, 290 P.3d 930 (mem.) (citation and internal quotation marks omitted). Rule 12(b)(6) of the Utah Rules of Civil Procedure allows for a complaint to be dismissed where the pleadings fail "to state a claim upon which relief can be granted." Utah R. Civ. P. 12(b)(6). "A rule 12(b)(6) motion to dismiss addresses only the sufficiency of the pleadings, and therefore, is not an opportunity for the trial court to decide the merits of the case." *Williams v. Bench*, 2008 UT App 306, ¶ 20, 193 P.3d 640 (citation and internal quotation marks omitted). "Nevertheless, in deciding the propriety of a rule 12(b)(6) motion, trial courts are obliged to address the legal viability of a plaintiff's underlying claim as presented in the pleadings." *Id*.

¶7      Snow first argues that the district court erred in dismissing his claim for breach of the implied covenant of good faith and fair

---

4. Snow also alleged other claims that he voluntarily dismissed prior to the district court's ruling on Chartway's motion to dismiss.

5. Snow also appealed the district court's dismissal of his claims for negligent misrepresentation and fraudulent nondisclosure but concedes in his reply brief to this court that the district court properly dismissed those causes of action.

dealing. Specifically, Snow claims that Chartway promised him that if he found a buyer who was willing to meet certain requirements, Chartway would allow that buyer to assume the loan. Snow argues that he relied on Chartway's promise, that he found a prospective buyer who was prepared to close on Chartway's terms, and that Chartway ultimately failed to accept that offer. "As a general rule, every contract is subject to an implied covenant of good faith." *Brown v. Moore*, 973 P.2d 950, 954 (Utah 1998) (citation and internal quotation marks omitted). "'Under [the covenant], both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract.'" *Markham v. Bradley*, 2007 UT App 379, ¶ 18, 173 P.3d 865 (alteration in original) (quoting *Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 14, 94 P.3d 193). "No such covenant may be invoked, however, if it would create obligations inconsistent with express contractual terms." *Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶ 10, 266 P.3d 814.

¶8 Here, the Note provides, "[Snow] cannot assign [his] rights under this agreement without [Chartway's] approval and any such assignment that is attempted shall be void." The Note further provides, "In the event of default, [Chartway] shall have all remedies allowed by law or equity." The district court determined that the Note contained "no language identifying that [Chartway is] obligated to negotiate new loan terms." Additionally, the district court concluded that "nowhere in the Note does it state that Heritage, and now Chartway, has to accept an offered short sale of [Snow's] property. [Snow's] assertions constitute new rights and duties between the parties that are inconsistent with the existing terms of the Note."

¶9 Snow concedes that the Note does not contain any language requiring Chartway to negotiate new terms or to accept any offered short sale of the Property. Nevertheless, Snow argues that Chartway's promise to allow a prospective buyer to assume the loan constituted a new agreement to which the implied covenant

of good faith and fair dealing applied independent of the Note. In response, Chartway contends that Snow's claim fails as a matter of law because Snow has not identified any written document containing that alleged promise in or attached to the Second Amended Complaint or on appeal that would satisfy the statute of frauds.

¶10   The Note states, "Statute of Frauds. This agreement, including the trust deed and documents incorporated herein, is a final expression of the agreement between the parties. This agreement cannot be contradicted by evidence of any alleged oral agreement." Utah's statute of frauds provides, "Every contract . . . for the sale, of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, is in writing . . . ." Utah Code Ann. § 25-5-3 (LexisNexis 2007); *see also id.* § 25-5-1 ("No estate or interest in real property . . . nor any trust or power over or concerning real property or in any manner relating thereto, shall be created, granted, assigned, surrendered or declared otherwise than by act or operation of law, or by deed or conveyance in writing . . . ."). "Generally, if an original agreement was required to comply with the statute of frauds, any material modification of that agreement must also conform to the statute of frauds." *Holt v. Katsanevas*, 854 P.2d 575, 579 (Utah Ct. App. 1993).

¶11   We agree with Chartway that Snow has failed to identify any written document satisfying the statute of frauds that modifies the Note or creates a new agreement requiring Chartway to negotiate new terms or to accept an assumption of the Note or a short sale of the Property.[6] Likewise, Snow does not assert any

---

6. On appeal, Snow argues that Chartway is estopped from asserting the statute of frauds as a defense because emails and other evidence exist that prove Chartway agreed to allow an assumption or a short sale under certain specified conditions. However, the exhibits attached to the Second Amended Complaint

(continued...)

exception to the statute of frauds. *See, e.g., Fericks v. Lucy Ann Soffe Trust*, 2004 UT 85, ¶ 14, 100 P.3d 1200 (discussing promissory estoppel exception to the statute of frauds); *Wilberg v. Hyatt*, 2012 UT App 233, ¶ 7, 285 P.3d 1249 (mem.) (discussing the part performance exception to the statute of frauds). Here, the terms of the Note do not require Chartway to relieve Snow of his obligations thereunder or to approve a third party to assume them. Absent a modification of the Note, using the covenant of good faith and fair dealing to require Chartway to accept an assumption would be inconsistent with the term of the Note making any assumption subject to Chartway's approval. The covenant cannot be used to impose obligations inconsistent with the terms of the underlying agreement. *See Young Living*, 2011 UT 64, ¶ 10. Where Snow has failed to come forward with any writing signed by either Chartway or Heritage in which the credit union agreed to modify the express terms of the written agreement or to approve an assumption of the loan or a short sale of the Property, we agree with the district court that the Second Amended Complaint does not state a claim for breach of the implied covenant of good faith and fair dealing.

---

6. (...continued)
do not include a writing executed by either Heritage or Chartway agreeing to modify the terms of the Note. *See* Utah Code Ann. § 25-5-1 (LexisNexis 2007) (requiring that the writing be "subscribed by the party" granting the interest in real property). Furthermore, Snow did not provide any such writing to the district court in response to Chartway's motion to dismiss, thereby converting it to a motion for summary judgment. *See generally* Utah R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

¶12   Snow next contends that the district court erred in dismissing his claim for negligent infliction of emotional distress. In order for Snow to establish a claim for negligent infliction of emotional distress, the Second Amended Complaint must allege that Chartway caused emotional distress under circumstances where Chartway should have realized that the "conduct involved an unreasonable risk of causing the distress" and, "from facts known to [it], should have realized that the distress, if it were caused, might result in illness or bodily harm." *See Harnicher v. University of Utah Med. Ctr.*, 962 P.2d 67, 69 (Utah 1998) (citation and internal quotation marks omitted); *see also* Restatement (Second) of Torts § 313 (1965). "[T]he emotional distress suffered must be severe; it must be such that a reasonable [person,] normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Harnicher*, 962 P.2d at 70 (second alteration in original) (citation and internal quotation marks omitted). However, a claim for negligent infliction of emotional distress "'does not give protection to mental and emotional tranquillity in itself.'" *Id*. (quoting Restatement (Second) of Torts § 313 cmt. a (1965)). "Consequently, much of the emotional distress which we endure . . . is not compensable." *Id*. at 72 (omission in original) (citation and internal quotation marks omitted).

¶13   Here, Snow argues that his Second Amended Complaint establishes a claim for negligent infliction of emotional distress because Chartway did not allow another buyer to assume the loan, delayed in approving the short sale, and then foreclosed on Snow's home. As a result, the Second Amended Complaint indicates that Snow "has gone through extreme weight loss and has undergone the care of a doctor as a result of his distress and suffering."

¶14   We have concluded, however, that nothing in the Note required Chartway to approve an assumption of the loan or a short sale of the Property. Accordingly, Snow's allegations cannot support a claim for negligent infliction of emotional distress

because Chartway's actions were consistent with the parties' contractual agreements.

> [C]onduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.

Restatement (Second) of Torts § 46 cmt. g (1965); *cf. Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 66, 70 P.3d 17 ("An allegation of improper . . . use of legal process against an individual is not redressable by a cause of action for intentional infliction of emotional distress." (citing *Cantu v. Resolution Trust Corp.*, 6 Cal. Rptr. 2d 151, 169 (Cal. Ct. App. 1992))); *Cantu*, 6 Cal. Rptr. 2d at 169 ("Where . . . a party acts in good faith to pursue its own legal rights, such conduct is privileged, even if emotional distress will result.").

¶15    Furthermore, Snow has not alleged facts that would cause a reasonable person to suffer severe injury rendering him unable to cope in his daily life. *See Harnicher*, 692 P.2d at 70; *see also Osmond v. Litton Loan Servicing, LLC*, No. 1:10-CV-11, 2011 WL 1988403, at *4 (D. Utah May 20, 2011) (determining that although foreclosure is "an upsetting experience, it is not the sort of experience that leaves the average person unable to cope or live his or her life" sufficient to establish a claim for negligent infliction of emotional distress). To hold otherwise would subject lenders to tort liability for the natural and understandable distress suffered by a borrower who defaults on a mortgage loan and therefore faces a foreclosure action. While we are not unsympathetic to the real emotional impact of losing one's home, the lender is merely pursuing the collateral the borrower agreed to pledge as security for repayment of the loan proceeds. Accordingly, we affirm the

district court's dismissal of Snow's claim for negligent infliction of emotional distress.

¶16     In sum, the district court properly dismissed Snow's claims for breach of the implied covenant of good faith and fair dealing and negligent infliction of emotional distress. Affirmed.

———