**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 2, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

VELOCITY PRESS, a Utah corporation,

    Plaintiff - Appellee,

v.

KEY BANK, NA,

    Defendant - Appellant.

Nos. 12-4172 & 13-4017
(D.C. No. 2:09-CV-00520-TS)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **HOLLOWAY**,[**] and **GORSUCH**, Circuit Judges.

---

Velocity Press, Inc. ("Velocity") was awarded damages and attorneys' fees

following a bench trial on Velocity's fraud, breach of contract, and fiduciary duty claims

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

[**] The late Honorable William J. Holloway, Jr., United States Senior Circuit Judge, participated as a panel member when this case was heard, but passed away before final disposition. "The practice of this court permits the remaining two panel judges if in agreement to act as a quorum in resolving the appeal." United States v. Wiles, 106 F.3d 1516, 1516 n.* (10th Cir. 1997); see also 28 U.S.C. § 46(d) (noting circuit court may adopt procedure permitting disposition of an appeal where remaining quorum of panel agrees on the disposition). The remaining panel members have acted as a quorum with respect to this Order and Judgment.

against KeyBank, N.A. ("Key"). Key appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm in part and reverse in part.

## I

Velocity is a commercial printer in Utah that specializes in web printing.[1] In October 2006, Velocity entered into a contract with Sanden Machines, Ltd. ("Sanden") to purchase a new custom printing press that would have substantially increased Velocity's printing capacity. Velocity agreed to pay Sanden a total of $1,797,229 in four progress payments: 30% down, 30% halfway through manufacturing, 35% when the press was completed and operating on Sanden's floor, and the final 5% when installation of the press was completed at Velocity's facility. The contract stated that Sanden anticipated delivering the press in six to eight months, but Drew Elkins, the owner and president of Velocity, testified that Sanden was "going to try and get this press done within three months."

Velocity paid Sanden $80,000 toward the down payment as a deposit and planned to obtain a loan for the remainder of the purchase price. The company received commitments from two banks to finance the press, and paid a refundable $7,500 down payment to one bank. Before completing either loan, however, Velocity was approached by Shelly Christopher, a relationship manager for Key. Christopher and her supervisor, Brian Van Camp, solicited Velocity's business. Elkins provided Van Camp with the details of the press contract and contact information for Sanden personnel so that Key

---

[1] Web printing refers to the technique of continuous printing onto rolls of paper. See Konstantopoulos v. Westvaco Corp., 893 F. Supp. 1263, 1267 (D. Del. 1994).

could familiarize itself with Sanden's business. Elkins also provided Key with a copy of the Velocity-Sanden contract.

On June 8, 2007, Velocity entered into a loan agreement with Key (the "June Loan"). The June Loan documents established a revolving line of credit for the express purpose of "Printing Press Construction," and allowed Velocity to request advances either orally or in writing. As part of the transaction, Velocity granted Key a security interest in all of its assets, and Elkins and his wife provided personal guarantees. Upon Velocity's request, Key transferred the remainder of the down payment to Sanden immediately after the June Loan documents were executed.

In the days prior to the closing of the June Loan, Key attempted to make three changes to Velocity's contract with Sanden without Velocity's knowledge. First, Key proposed and Sanden agreed that the third progress payment would be paid when the press was delivered to Velocity, rather than the date it was operating on Sanden's floor as provided in the Velocity-Sanden contract. Second, Key obtained a first position security interest in the initial $250,000 of parts and materials purchased to construct Velocity's press, even though Velocity's contract with Sanden gave Sanden the first position security interest in that material. Third, Key informed Sanden that it would have to obtain a letter of credit to secure the second progress payment before that payment would be advanced. Elkins testified that he would not have signed the June Loan documents had he been aware of these changes.

On July 6, 2007, Christopher wrote to Sanden, seeking an update on the letter of credit that Key understood Sanden would have in place before the second progress

-3-

payment was made. Peter Williams, a Sanden employee, responded on July 19, stating that Sanden thought Key would be issuing a letter of credit. In light of this confusion, Williams indicated that "funding the [letter of credit] in time to maintain production would be impossible." The email concluded that "it was, and is, Sanden's expectation that we were to receive the second progress payment as normal, per the terms of the contract and deviation from this will result in significant production delays as the production schedule is sold out through January of 2008." Representatives from the bank testified that the letter of credit requirement was imposed to protect the bank's assets despite knowledge that the requirement would delay production of the press.

After receiving this email, Key decided that rather than requiring Sanden to obtain a letter of credit to secure the second progress payment, Key would itself issue a letter of credit in lieu of the second progress payment. This approach would force Sanden to seek independent funding using the Key letter of credit as collateral. To move forward with this plan, Key sent Elkins a new loan agreement and a letter of credit application, but Christopher misrepresented to Elkins that Sanden had imposed this new requirement. On August 9, 2007, Velocity and Key entered into a modified loan agreement (the "August Loan"). Elkins was told that he would not receive any additional financing unless he agreed to sign the letter of credit application. And the loan documents did not indicate that the letter of credit was being substituted for the second progress payment.

Due to funding issues created by Key's letter of credit requirement, Sanden rearranged its production schedule. Using components purchased for Velocity's press, Sanden completed a press ordered by a different company, North Star, which had been

scheduled for manufacture after Velocity's press. Sanden later began work on a press for yet another customer, Corporate Express, which had also initially been behind Velocity in the production schedule. Sanden never submitted an invoice for the second progress payment to Velocity because Key had communicated that funding would not be forthcoming.

In September 2008, Sanden filed for bankruptcy without ever resuming work on Velocity's press. Sanden did, however, complete construction of the press for Corporate Express (and had completed the North Star press prior to bankruptcy). Velocity filed a claim with Sanden's bankruptcy trustee for the amount of the 30% down payment, but the bankruptcy trustee denied all but $80,000 of Velocity's claim because Sanden's records indicated that the rest of the money had come from Key. Elkins attempted to negotiate an assignment of Key's security interest to Velocity after Velocity obtained financing and paid Key the full amount owed on the loan. But Elkins refused to sign the assignment offered by Key because Key required a release of liability.

Velocity eventually filed suit against Key, as well as several other defendants that were dismissed with prejudice in January 2011 and are not parties to this appeal. The complaint stated claims against Key for breach of fiduciary duty, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. Velocity also sought punitive damages and an award of attorneys' fees and costs. After a bench trial, the district court determined that Key did not repudiate either the June Loan or the August Loan and thus was not liable for breach of contract. However, the court concluded that Key violated the implied covenant of good faith and breached a fiduciary

duty it owed to Velocity. After allowing Velocity to add a fraud claim, the court also found that Key fraudulently induced Velocity to enter into the loan. It awarded Velocity $904,576.41 in damages, as well as attorneys' fees. Key timely appealed.

**II**

Before addressing Key's claim-specific contentions, we consider its over-arching argument that the evidence was insufficient to support a finding that Key's actions caused Velocity's damages. In particular, Key contends that the court replaced the required proximate cause analysis with a "but for" analysis.

Utah law[2] provides that proximate cause is generally an issue reserved for the finder of fact. Pace v. Swerdlow, 519 F.3d 1067, 1074 (10th Cir. 2008) (citing Steffensen v. Smith's Mgmt. Corp., 820 P.2d 482, 486 (Utah Ct. App. 1991)). We thus review the district court's determination only for clear error. See Sw. Stainless, LP v. Sappington, 582 F.3d 1176, 1183 (10th Cir. 2009). "A finding of fact is 'clearly erroneous' if it is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." Id. (quotation omitted). This Court reviews the evidence "in the light most favorable to the district court's ruling and must uphold any district court finding that is permissible in light of the evidence." Id. (quotation omitted).

"Proximate cause is that cause which, in the natural and continuous sequence (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred. It . . . necessarily sets in operation the factors that

---

[2] The parties agree that Utah substantive law governs this diversity case.

-6-

accomplish the injury." Mahmood v. Ross, 990 P.2d 933, 938 (Utah 1999) (quotation and alteration omitted). The district court concluded "that Sanden's bankruptcy was not an intervening cause, as it was reasonably foreseeable that requiring Sanden to find independent financing could lead to financial difficulties and delaying construction of the press for over a year could lead to the press not being constructed." The court also concluded that Sanden would have had the ability to complete Velocity's press in 2007 had it not been for the letter of credit requirement.

The record amply supports the district court's findings. In Williams' July 19, 2007 email to Christopher, he repeatedly warned Christopher that the letter of credit requirement would jeopardize the "ongoing production of the press" and that it could "result in significant production delays." James Watts, one of the salespeople who worked for Sanden on the Velocity press, testified that it would have taken six to eight weeks for Sanden to complete Velocity's press had Sanden received the second progress payment in July 2008. Watts also stated that, had the payment been made, other presses would not have been moved in front of Velocity's in the production schedule. Taking the evidence "in the light most favorable to the district court's ruling," Sw. Stainless, LP, 582 F.3d at 1183, the district court did not clearly err by determining that Key's actions "necessarily set[] in operation the factors that accomplish the injury," Mahmood, 990 P.2d at 938 (quotation omitted).

**III**

**A**

-7-

Key argues that the district court erred by allowing Velocity to amend its pleadings to add a claim for fraud. Federal Rule of Civil Procedure 15(a)(2) provides that when a party is not amending as a matter of course, amendment is permitted "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Id.[3] A decision granting leave to amend under Rule 15(a)(2) "is within the trial court's discretion, and will not be disturbed absent an abuse of that discretion." Orr v. City of Albuquerque, 417 F.3d 1144, 1153 (10th Cir. 2005) (citation and quotation omitted). "A district court abuses its discretion if its decision is arbitrary, capricious, whimsical, or manifestly unreasonable." Id. (quotation omitted).

The Supreme Court has emphasized that leave to amend should generally be granted in "the absence of any apparent or declared reason" to the contrary, such as "undue delay" or "undue prejudice to the opposing party by virtue of allowance of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). The "most important" factor in determining whether to grant a motion to amend the pleadings "is whether the amendment would prejudice the nonmoving party." Minter v. Prime Equip. Co., 451 F.3d 1196, 1207 (10th Cir. 2006). "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the

---

[3] The parties disputed below whether the district court should have analyzed Velocity's amendment under Rule 15(a) or 15(b). In granting Velocity's motion to amend, the district court stated that "amendment [wa]s appropriate under either standard." On appeal, Key concedes that "Velocity made the equivalent of a pretrial motion to amend under Rule 15(a)." Key also argues that amendment was impermissible under either subsection, however, because Key was unfairly prejudiced by the amendment. We reject Key's claim of prejudice, infra, regardless of which subsection is at issue.

amendment." Id. at 1208 (quotation omitted). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." Id. With respect to undue delay, we focus "primarily on the reasons for the delay." Id. at 1206.

Velocity first addressed the possibility of amending its complaint to add a fraud claim in the pretrial order. It stated that, "[i]f the evidence supports a fraud claim, Velocity intends to file a motion to amend the pleadings to conform to the proof." On February 6, 2012, during the trial, Velocity formally moved to add its fraud claim. The court granted Velocity's motion after trial, finding that Velocity "made its request in good faith and did not . . . unduly or inexplicably delay in doing so." In granting the motion, the court explained that discovery disputes resulted in "many documents [being] turned over by Key[] well after the discovery deadline ha[d] passed." The court also rejected Key's arguments that it would be prejudiced by the addition of the claim because "the allegedly fraudulent statements were made by Key[] employees and witnesses and were supported at trial by internal Key[] documents."

We agree with the district court's analysis. Key's position is analogous to that of the appellee in Minter, in that it "offers little explanation as to how it w[as] prejudiced" given the "significant overlap in the factual underpinnings and defenses" between the new and existing claims. 451 F.3d at 1208. Aside from any testimony by Elkins, the relevant witnesses and documents were within the control of Key. Key did not request a continuance to allow additional discovery, or even note what additional discovery would be necessary. To the extent that Key argues that the fraud claim was a "moving target,"

we note that the claim was succinctly laid out in Velocity's memorandum in support of its motion to amend, which closely tracked the factual statement set forth in Velocity's trial brief.

Nor has Key shown that the amendment was unduly delayed. We have held that "[l]ateness does not of itself justify the denial of the amendment." R.E.B., Inc. v. Ralston Purina Co., 525 F.2d 749, 751 (10th Cir. 1975). Instead, "denial of leave to amend is appropriate when the party filing the motion has no adequate explanation for the delay." Minter, 451 F.3d at 1206 (quotation omitted). The record supports the district court's concern with Key's document production, showing discovery disputes continuing into the months preceding trial despite Key's claim that the relevant documents were produced. We thus conclude that Key has not demonstrated an abuse of discretion.

**B**

Key also advances two arguments attacking the district court's disposition of Velocity's fraud claim. It contends both that the claim was waived and that Velocity failed to prove that the alleged fraud caused Velocity to act to its detriment.

According to Key, Velocity waived its fraud claim through its "course of conduct." See generally Doctors' Co. v. Drezga, 218 P.3d 598, 603-04 (Utah 2009). Specifically, Key asserts that Velocity lost any claim that it was fraudulently induced into the June Loan when it signed the August Loan. However, the district court found that at the time of the August Loan, Velocity continued to believe that Sanden (rather than Key) required a letter of credit based on misrepresentations by Christopher. And nothing in the August Loan documents would have disabused Velocity of this notion.

-10-

Under Utah law, a fraud claim is waived "only when there is a new agreement between the parties, <u>after discovery of the fraud</u>." <u>Dugan v. Jones</u>, 615 P.2d 1239, 1247 (Utah 1980) (emphasis added), <u>superseded by rule on other grounds as stated in</u> <u>Arnold v. Curtis</u>, 846 P.2d 1307 (Utah 1993). This rule defeats Key's waiver assertion. As Key notes, "[t]here may be situations where a person would voluntarily choose to waive existing fraud claims or even waive unknown claims of fraud," <u>Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.</u>, 850 P.2d 447, 453 n.18 (Utah 1993). But the record in this case does not suggest that Velocity voluntarily chose to waive any claims of fraud.

Key also challenges the district court's conclusion that Velocity was induced to enter the June Loan to its detriment. As discussed <u>supra</u>, however, the district court's causation findings are fully supported by the record. And Key's particularized arguments about the fraud claim fare no better than its general causation assertions. The district court found that Key withheld from Elkins the fact that it did not intend to provide a second progress payment unless a letter of credit was in place and did so to induce Velocity to enter into the June Loan. The court also concluded that Key's actions with respect to the letter of credit and the second progress payment caused delays in construction of Velocity's press, additional interest payments, and Sanden's ultimate failure to manufacture the press prior to its bankruptcy. Because those findings are supported by the record, we affirm the court's conclusions on Velocity's fraud claim.

**IV**

We next consider Key's contention that it did not breach the implied covenant of good faith and fair dealing. The covenant of good faith and fair dealing exists in every contract in Utah, see Young Living Essential Oils, LC v. Marin, 266 P.3d 814, 819 (Utah 2011), creating an "implied duty that contracting parties refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract," id. at 816 (quotation omitted). Breach of the covenant should be analyzed as an objective question, without regard to a party's subjective state of mind. Markham v. Bradley, 173 P.3d 865, 871 (Utah Ct. App. 2007). Although the covenant is implied into all contracts, it is subject to several limitations:

> First, this covenant cannot be read to establish new, independent rights or duties to which the parties did not agree ex ante. Second, this covenant cannot create rights and duties inconsistent with express contractual terms. Third, this covenant cannot compel a contractual party to exercise a contractual right to its own detriment for the purpose of benefitting another party to the contract. Finally, we will not use this covenant to achieve an outcome in harmony with the court's sense of justice but inconsistent with the express terms of the applicable contract.

Oakwood Vill. LLC v. Albertsons, Inc., 104 P.3d 1226, 1240 (Utah 2004) (quotation and citations omitted).

The district court determined that Key breached the covenant of good faith and fair dealing by renegotiating the Velocity-Sanden Contract without Velocity's knowledge and telling Sanden, after the June Loan was executed, that a letter of credit needed to be in place before Key would make the second progress payment. These actions, the court found, were inconsistent with the agreed purpose of the loan agreements, which was to provide periodic financing for Sanden's construction of Velocity's press. Under Utah

-12-

law, "whether there has been a breach of good faith and fair dealing is a factual issue, generally inappropriate for decision as a matter of law." Cook v. Zions First Nat'l Bank, 919 P.2d 56, 60-61 (Utah Ct. App. 1996) (quotation omitted). Accordingly, we review the district court's factual findings on this issue for clear error.

Key argues that because it informed Sanden that it would not adhere to the terms of the June Loan agreement before the execution of that agreement, its actions cannot have breached the implied covenant. We doubt that Key's notification of a third party of its intent not to honor a contract can insulate it from implied covenant claims given that Velocity was unaware of Key's plans. Even assuming, however, that this argument has a basis in law, there is sufficient evidence in the record to support the district court's conclusion that Key continued to prevent Velocity from receiving the fruits of its contracts even after they were executed. See Young Living, 266 P.3d at 816.

Key also contends that actions occurring prior to execution of the August Loan cannot support the covenant claim because Velocity agreed that Key would issue a letter of credit in that document. The district court, however, correctly explained that the August Loan documents did not require a letter of credit and certainly did not indicate that loan disbursements would be replaced by a letter of credit. Instead, the court found that Elkins was not aware of the delay caused by the letter of credit requirement until October 2007. And we have no reason to declare this finding clearly erroneous. Finally, to the extent that Key reiterates its causation arguments regarding its breach of the implied covenant of good faith and fair dealing, as we have addressed supra, the district court's findings were not clearly erroneous.

**V**

Key claims that the district court erred in ruling that it owed a fiduciary duty to Velocity. "[T]he existence of a fiduciary relationship in Utah is a question of fact where the evidence or inferences to be drawn therefrom conflict." United States v. Welch, 327 F.3d 1081, 1102 (10th Cir. 2003). However, "[w]e review de novo the district court's rulings with respect to state law." Henrie v. Northrop Grumman Corp., 502 F.3d 1228, 1231 (10th Cir. 2007). "Courts have generally refrained from definitively listing the instances of fiduciary relationships in such a way as to risk excluding the penumbra of unknown or unraised relevant cases." First Sec. Bank of Utah N.A. v. Banberry Dev. Corp., 786 P.2d 1326, 1332 (Utah 1990). A bank typically does not owe a fiduciary duty to its customers, but a fiduciary relationship may arise if a customer "place[s] particular confidence in" the bank, if the bank was "in a position to have and exercise influence over" the customer, if the customer placed property in the bank's charge, if there was "overmastering influence, dependence, or trust justifiably (and with mutual understanding) reposed" or "weakness of age, mental strength, business experience, or intelligence" on the part of the customer. Id. at 1333.

The district court found that a fiduciary relationship existed because Key was "in a condition of superiority" and "acted as if Velocity had placed peculiar confidence in Key[] and as if Velocity's interest and authority had been placed in Key[]'s charge when it attempted to modify the Velocity-Sanden contract and impose additional conditions before disbursements would be made." It further concluded that Key "breached its

-14-

fiduciary duties to Velocity . . . by leading Sanden to believe that a letter of credit needed to be in place before the second draw could be made under the loan."

There can be no doubt that if Key owed Velocity a fiduciary duty, it was breached. However, we must reverse the district court's conclusion that Key owed Velocity a fiduciary duty on these facts. Although Key may have acted as if Velocity placed "particular confidence" in Key, we see no evidence that Velocity actually did so such that Key would be a fiduciary under Utah law. See First Sec. Bank, 786 P.2d at 1333. Rather, Velocity complains that Key acted beyond the scope of its authority by making misleading comments to Sanden without Velocity's knowledge. Although these actions make out claims for fraud and breach of the implied covenant of good faith and fair dealing, Velocity does not direct us to any Utah cases finding a fiduciary relationship under similar circumstances.

Nor does the fact that Key was aware of its own fraud give rise to fiduciary status. A party will always have superior knowledge of its own actions; courts in Utah have looked to superiority of "age, mental strength, business experience, or intelligence" in finding a fiduciary relationship. See id. The record suggests that Velocity and Elkins were sophisticated actors. We accordingly reverse the district court's decision in favor of Velocity on its fiduciary duty claim.

**VI**

Although the district court did not directly address this contention, Key argues that Velocity released its claims by signing a Letter of Credit Reimbursement and Security Agreement. The district court's failure to explicitly decide this issue does not require

-15-

remand, however, given that we would review it de novo in any event.  See Flood v.

ClearOne Commc'ns, Inc., 618 F.3d 1110, 1117-18 (10th Cir. 2010); see also United

States v. Zeigler, 105 F.3d 670, No. 96-5043, 1997 WL 4281, at *1 (10th Cir. 1997)

(unpublished) (finding "no reason to remand the matter to the district court for decision in

the first instance" where review would be de novo and "the record is sufficient").

The agreement cited by Key provides that Key is not responsible "for any breach

of contract between any person and" Velocity.  It also holds Key harmless

> for any and all costs, liabilities and expenses (including reasonable attorney
> fees) incurred by [Key] and arising out of or in any way relating to (1) any
> underlying investments, transaction, and/or contracts between [Velocity]
> and [Sanden] under the [Letter of Credit] or any of its agents and (2) any
> proper payment in accordance with the terms of the [Letter of Credit], any
> refusal to pay or honor the [Letter of Credit], or any other action or
> omission by [Key], or [Key]'s correspondents or agents.

Elkins' signature on the agreement was dated July 27, 2007.

Key's argument that this clause relieves it of liability is foreclosed by precedent

from the Utah Supreme Court as it applies to the claims of fraud and breach of the

implied covenant of good faith and fair dealing.  "The law does not permit a covenant of

immunity which will protect a person against his own fraud on the ground of public

policy.  A contract limitation on damages or remedies is valid only in the absence of

allegations or proof of fraud."  Lamb v. Bangart, 525 P.2d 602, 608 (Utah 1974).  Having

affirmed Velocity's success on its fraud claim, this release cannot be given effect.

Moreover, the case at bar is reminiscent of Ong International (U.S.A.) Inc.  In that

case, the court refused to enforce a liability release contained in a second agreement

because the initial contract was induced by fraud and the misrepresentations continued at

-16-

the time that the second document was executed.  850 P.2d at 453.  Because the release was a "continuing part of defendants' willful misrepresentations and omissions," the court held it "cannot be separated from the fraudulently induced contract."  Id.  Similarly, in the present matter, the district court permissibly concluded that Velocity was fraudulently induced into signing the June Loan and that Elkins did not discover Key's fraud until after the release was executed.  We thus conclude that the release does not bar Velocity's claims.

## VII

Finally, Key appeals from the district court's judgment regarding attorneys' fees and costs.  In that order, the district court awarded Velocity attorneys' fees pursuant to Utah's reciprocal fee statute on the basis of the following paragraph, which was included in the promissory notes for both the June Loan and the August Loan:

> ATTORNEYS' FEES; EXPENSES.  Lender may hire or pay someone else to help collect this Note if Borrower does not pay.  Borrower will pay Lender that amount.  This includes, subject to any limits under applicable law, Lender's reasonable attorney's fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation all reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals.  If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

The Utah reciprocal fee statute provides that "[a] court may award costs and attorney fees to either party that prevails in a civil action based upon any promissory note, written contract, or other writing . . . when the provisions of the promissory note, written contract, or other writing allow at least one party to recover attorney fees."  Utah Code § 78B-5-826.  This court reviews the award of attorneys' fees for abuse of

-17-

discretion, but reviews the underlying legal determinations de novo. D.A. Osguthorpe Family P'ship v. ASC Utah, Inc., 705 F.3d 1223, 1236 (10th Cir. 2013).

"Attorney fees are generally recoverable in Utah only when authorized by statute or contract." Reighard v. Yates, 285 P.3d 1168, 1182 (Utah 2012). The Utah Supreme Court recently reiterated that the reciprocal fee statute

> consists of a conditional if/then statement: (a) If the provisions of a written contract allow at least one party to recover attorney fees in a civil action based upon the contract, (b) then a court may award attorney fees to either party that prevails. An action is based upon a contract under the statute if a party to the litigation asserts the writing's enforceability as basis for recovery.

Insight Assets, Inc. v. Farias, 321 P.3d 1021, 1027 (Utah 2013) (quotations, footnote, and alterations omitted). The statute "is triggered only when the provisions of the contract would allow at least one party to recover fees if that party had prevailed under its theory of the case." Bushnell v. Barker, 274 P.3d 968, 971 (Utah 2012). It "was designed to create a level playing field for parties to a contractual dispute . . . by allowing both parties to recover fees where only one party may assert such a right under contract, remedying the unequal allocation of litigation risks built into many contracts of adhesion." Bilanzich v. Lonetti, 160 P.3d 1041, 1046 (Utah 2007) (quotation and alteration omitted). Thus, courts may award fees to either party in cases "where pursuing or defending an action results in an unequal exposure to the risk of contractual liability for attorney fees." Id.

Key argues that the district court erred because the language of the promissory note allowed it to recover fees only in limited circumstances, none of which were present

in this case. We agree. The attorneys' fee provision allowed Key to recover only if it "hire[d] or pa[id] someone else to help collect this Note if [Velocity] does not pay." It is undisputed that Velocity paid Key all sums owed pursuant to the parties' agreement, and there is no suggestion that Key expended resources to obtain payment. As the Utah Court of Appeals has explained, the reciprocal fee statute "does not create an independent right to a fee award that the contract's attorney fee provision would not allow to either party simply because the fee provision is one-sided." PC Crane Servs., LLC v. McQueen Masonry, Inc., 273 P.3d 396, 408 (Utah Ct. App. 2012).

The district court concluded that because payments made under the promissory note were put at issue, Key would have been able to claim attorneys' fees had it prevailed. We cannot agree with this conclusion. Some Utah cases have held that defending against a challenge to the validity of a contract qualifies for a reciprocal fee award. See Anderson & Karrenberg v. Warnick, 289 P.3d 600, 605 (Utah Ct. App. 2012) ("[T]he defense of [defendant's] counterclaim was covered by the fees provision because if [defendant] had proved that the Agreement had been procured by fraud, [plaintiff] could not enforce it."); Chase v. Scott, 38 P.3d 1001, 1005 (Utah Ct. App. 2001) (holding that defense to suit to rescind a contract was "litigation . . . to enforce" the contract under the meaning of an attorneys' fees provision). But the contractual provisions at issue in those cases were much broader than the one at issue in this case. See Anderson & Karrenberg, 289 P.3d at 602 (fees available "[i]n the event that sums payable under this agreement become the subject of litigation"); Chase, 38 P.3d at 1003 (allowing for fees "[i]n the event of litigation . . . to enforce this Contract"). Because Key did not incur

-19-

expenses to collect on the note, the fee provision in this case would not have allowed for recovery if Key had successfully defended against Velocity's claims. See Giusti v. Sterling Wentworth Corp., 201 P.3d 966, 981 (Utah 2009) (rejecting argument "that whenever litigation is based on a writing that contains a provision allowing at least one party to recover attorney fees, the precise terms of the provision are irrelevant, and district courts should liberally award fees to prevailing parties").

Velocity argues that the relevant inquiry is not whether Key would have been entitled to fees had it successfully defended against the claims asserted, but whether the hypothetical assertion by Key of an analogous claim would have entitled Key to fees. And because the only way Velocity could have breached the agreement, Velocity contends, is by failing to pay, fees should be available for any and all breach of contract claims. The promissory notes do not support Velocity's factual assertion: they provide several grounds upon which Velocity might default. Moreover, Velocity's proffered mode of analysis is inconsistent with that applied by Utah courts. The reciprocal fee analysis "is undertaken in the hypothetical—under an alternative consideration in which the tables were turned and the opposite party prevailed." Hooban v. Unicity Int'l, Inc., 285 P.3d 766, 771 (Utah 2012); see also Insight Assets, Inc., 321 P.3d at 1027 (fees available to defendant because plaintiff would have been entitled to fees had it prevailed "in the action"); Anderson & Karrenberg, 289 P.3d at 604 n.4 (reciprocal fee "determination is focused on the claims that trigger the fees provision"). We must look to whether fees would have been available to the other party had it prevailed on the claims asserted rather than considering hypothetical claims that might have been asserted

by the losing party.[4]  And because we conclude that the fee provision was not triggered by Velocity's claims, we reverse the fee award.

## VIII

For the foregoing reasons, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings consistent with this order and judgment.

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

[4] Velocity argues that Key should not be permitted to take the position that it would not have been entitled to fees had it prevailed because Key requested attorneys' fees below.  However, Key requested an award of attorneys' fees only pursuant to the reciprocal fee statute based on Velocity's request for fees.  Because Key did not assert an independent entitlement to fees, we reject Velocity's argument.